Vosburg vs. Putney.

*By the Court.*— The judgment of the circuit court is affirmed.

Vosburg, Respondent, vs. Putney, Appellant.

*October 20 — November 5, 1890.*

Evidence. *(1) Expert testimony of surgeon: Cause of injury. (2) Damages: Financial condition of father of minor plaintiff.*

1. It was error to permit a surgeon to testify that in his judgment the exciting cause of the condition of plaintiff's injured leg as he found it was a blow upon the shin bone from the foot of a school-mate,

Vosburg vs. Putney.

where such testimony was based upon what was told the witness when he first examined the leg about two weeks after the injury, and it did not appear what was then told him or who gave him the information.

2. In an action for personal injuries to a minor, evidence of the pecuniary circumstances of his father was inadmissible; and the error of admitting such testimony is not rendered immaterial by the fact that the court did not instruct the jury that this element was to be considered in assessing damages.

APPEAL from the Circuit Court for *Waukesha* County. The facts are stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *M. S. Griswold* and *T. W. Haight*, and oral argument by *Mr. Haight*.

For the respondent there was a brief by *Ryan & Merton*, and oral argument by *T. E. Ryan*.

ORTON, J.  The facts of this case are briefly as follows: The plaintiff was about fourteen years of age, and the defendant about eleven years of age. On the 20th day of February, 1889, they were sitting opposite to each other across an aisle in the high school of the village of Waukesha. The defendant reached across the aisle with his foot, and hit with his toe the shin of the right leg of the plaintiff. The touch was slight. The plaintiff did not feel it, either on account of its being so slight or of loss of sensation produced by the shock. In a few moments he felt a violent pain in that place, which caused him to cry out loudly. The next day he was sick, and had to be helped to school. On the fourth day he was vomiting, and Dr. Bacon was sent for, but could not come, and he sent medicine to stop the vomiting, and came to see him the next day, on the 25th. There was a slight discoloration of the skin entirely over the inner surface of the tibia an inch below the bend of the knee. The doctor applied fomentations, and gave him anodynes to quiet the pain. This treatment was continued, and the

swelling so increased by the 5th day of March that counsel was called, and on the 8th of March an operation was performed on the limb by making an incision, and a moderate amount of pus escaped. A drainage tube was inserted, and an iodoform dressing put on. On the sixth day after this, another incision was made to the bone, and it was found that destruction was going on in the bone, and so it has continued exfoliating pieces of bone. He will never recover the use of his limb. There were black and blue spots on the shin bone, indicating that there had been a blow. On the 1st day of January before, the plaintiff received an injury just above the knee of the same leg by coasting, which appeared to be healing up and drying down at the time of the last injury. The theory of at least one of the medical witnesses was that the limb was in a diseased condition when this touch or kick was given, caused by microbes entering in through the wound above the knee, and which were revivified by the touch, and that the touch was the exciting or remote cause of the destruction of the bone, or of the plaintiff's injury. It does not appear that there was any visible mark made or left by this touch or kick of the defendant's foot, or any appearance of injury until the black and blue spots were discovered by the physician several days afterwards, and then there were more spots than one. There was no proof of any other hurt, and the medical testimony seems to have been agreed that this touch or kick was the exciting cause of the injury to the plaintiff. The jury rendered a verdict for the plaintiff of $2,800.

The learned circuit judge said to the jury: "It is a peculiar case, an unfortunate case, a case, I think I am at liberty to say, that ought not to have come into court. The parents of these children ought, in some way, if possible, to have adjusted it between themselves." We have much of the same feeling about the case. It is a very strange

and extraordinary case. The cause would seem to be very slight for so great and serious a consequence. And yet the plaintiff's limb might have been in just that condition when such a slight blow would excite and cause such a result, according to the medical testimony. That there is great uncertainty about the case cannot be denied. But perfect certainty is not required. It is sufficient that it is the opinion of the medical witnesses that such a cause even might produce such a result under the peculiar circumstances, and that the jury had the right to find, from the evidence and reasonable inferences therefrom, that it did. We will refrain from further comment on the case, as another trial will have to be had in it.

There were two errors committed on the trial and in the admission of testimony, too important and material to be overlooked.

1. Dr. Philler, a witness for the plaintiff, was asked: " What, in your judgment, was the exciting cause of the condition of this leg as you found it?" This was objected to on the ground that the foundation had not been laid for such a question. The objection was overruled, and the witness answered: " Under the history I learned at the time, a certain *traumatism* — a certain injury received while at school, from the foot of another classmate; in other words, the blow upon the shin bone." The learned counsel of the appellant now contends further that the question was objectionable because it sought to obtain a conclusion of fact from the witness, which it was the province of the jury only to find. But we will consider only the ground of the objection then stated and found in the record. The learned circuit court ruled directly on the objection that the foundation for such a question had not been sufficiently laid. The witness had no personal or professional knowledge of the case until the 6th day of March, about two weeks after the injury. His answer shows his incompetency to answer

the question.  He answered it "under the *history he learned*
at the time."  What facts about the case did he learn, and
from whom did he learn them?  Were they true or false?
He does not even give his opinion upon the testimony of
other witnesses. in court, and no hypothetical statement
was submitted to him.  No foundation recognized by any
authority was laid for his answer to such a question, and
he did not show himself competent to answer it.  This was
clearly error.  *Luning v. State,* 2 Pin. 220; *Noonan v. State,*
55 Wis. 258; *Bennett v. State,* 57 Wis. 69.

. 2. The father of the plaintiff, Seth B. Vosberg, as a wit-
ness on behalf of the plaintiff, was asked in relation to his
circumstances and concerning his employment and the
number of his children, and answered that his business was
that of teamster for the Barker Lumber Company, and that
he had three children.  This was objected to by the learned
counsel of the defendant.  The learned counsel of the plaint-
iff stated that he wanted to show the situation of the family,
and if the father was able to educate the plaintiff, his son,
himself it would make quite a difference as to the amount
of damages he should have, and if the plaintiff has a rich
father who could take care of him and provide for and edu-
cate him he did not think the jury would be warranted to
give as large a verdict.  The court overruled the objection.
This occurred in the presence of the jury, and the learned
counsel of the respondent commented on it to the jury by
permission of the court against the further objection of the
defendant, so that the jury must have considered them-
selves instructed to give the plaintiff greater damages in
consequence of the poverty of his father.  He was a hired
man, and therefore could not have been rich.  This was not
a case for exemplary or punitory damages, and the plaintiff
was entitled only to strict compensatory damages in case he
recovered in the action.  In such a case it would not have
been proper even to prove the *defendant* rich or poor. *Hare*

*v. Marsh,* 61 Wis. 435. It is sometimes proper to prove the pecuniary circumstances of the defendant, but I never heard of a case like this where it was deemed proper to prove the financial condition of the plaintiff or of his father. The plaintiff, if he recovered, was entitled to full compensation for his injury, no less and no more, whatever his pecuniary circumstances or those of his father. The learned counsel of the respondent say in their brief: "The court did not instruct the jury that this was an element of damage that they might consider, therefore we say that the alleged error is no error." We do not think that this court would be justified in saying this. We cannot but think that the verdict would have been for a less amount if this evidence had not been ruled in expressly in order to affect the damages.

On account of these two errors the judgment will have to be reversed.

*By the Court.*— The judgment is reversed, and the cause remanded for a new trial.