Carrie E. Switzer, Appellee, v. William Henry Baker et al., Appellants.

**NEGLIGENCE:** Imputed Negligence—Absence of Control—Automobile Accident. The negligence of one person may not be imputed to another without some showing that such negligent person, at the time of such negligence, was engaged in or about the business, and in some degree subject to the control of such other person. So held as to an automobile accident.

**TRIAL:** Directed Verdict—Contradictions in Testimony of Witness —Effect. Positive testimony, material and relevant, and, if true, supporting a verdict for the party offering, even though marred by inconsistencies and contradictions, prevents a directed verdict for the opposite party. So held in a negligence case involving an automobile accident.

**MUNICIPAL CORPORATIONS:** Use of Streets—Pedestrians' Right
3 of Precedence at Crossings—Negligence. The right of precedence given by an ordinance to a pedestrian over motor vehicles
at public crossings does not authorize a pedestrian *to loiter upon
or obstruct* such crossing, but simply imposes upon the motor
vehicle driver the duty to afford the pedestrian reasonable opportunity to first use the crossing, in those cases where the pedestrian
and the driver of a motor vehicle approach a crossing at the same
time or in such manner that, if both continue in their respective
course, there is danger of collision.

**MUNICIPAL CORPORATIONS:** Use of Streets—Simultaneous Use
4 of Crossing—Anticipating Unreasonable Possibility—Negligence.
A driver of a motor vehicle, who enters upon a public street crossing at a time when a pedestrian, passing over the crossing at
right angles to the vehicle, has so far proceeded as to permit such
driver, as a reasonably prudent person, to drive over the crossing
behind the pedestrian, *is under no obligation to keep his vehicle
under such control that he can meet the possibility that the pedestrian may suddenly change his mind or become panic stricken, and
turn back into collision with the vehicle.*

**TRIAL:** Instructions—Form, Requisites and Sufficiency—Exagger
5 ated Prominence of Particular Matter. An instruction from
which the jury would acquire an exaggerated conception of the
obligation and duty of one of the parties to litigation, may be
reversible error, even though it be *possible* to construe the same
in harmony with the law. So held as to an instruction defining
the duty of a motor vehicle driver in passing over a street crossing in the rear of a pedestrian.

**MUNICIPAL CORPORATIONS:** Ordinances—Reasonableness—Rel
6 ative Rights and Duties at Street Crossings. An ordinance which
would require the driver of' a motor vehicle, upon arriving at a
public crossing upon which a pedestrian is moving in either direction, to stop and wait until the pedestrian had fully cleared the
entire length of the crossing, and thereby render *it* certain that
the pedestrian would not turn back into the street, would be void
for unreasonableness.

**EVIDENCE:** *Opinion Evidence—Hearsay Forming Basis of Opinion.*
7 The opinion of a physician as to the condition of an injured party,
based wholly on what such injured party *and others* have told such
physician, is wholly incompetent.

PRINCIPLE APPLIED: A physician had never professionally
treated the party in question. One or two days before the trial,
in reply to questions, this party told the physician as to her past

and present condition of health, her ability to sleep, her ability to do or not to do things, and as to the existence of pain and suffering. The physician made no physical examination to verify the injured party's statements. Another physician and also a nurse gave the physician in question information, the nature of which is not revealed, concerning the injured party. *Held*, the opinion of the physician as to what the injured party was suffering from and the extent thereof, was incompetent.

**EVIDENCE:   Opinion Evidence—Opinion Based on Both Competent and Incompetent Basis—Effect.** The opinion of an expert, based in part on a proper assumption of facts having support in the record, and *in part on pure hearsay*, is wholly incompetent.

*Appeal from Polk District Court.—*W. S. AYRES, Judge.

MONDAY, DECEMBER 18, 1916.

PLAINTIFF sues to recover damages for personal injury, and from a judgment in her favor against both defendants they appeal. The material facts are stated in the opinion.—*Reversed and remanded.*

*Read & Read,* for appellants.

*Thomas J. Guthrie* and *Thomas A. Cheshire,* for appellee.

WEAVER, J.—On October 28, 1913, at the crossing of West Locust and Seventh Streets in the city of Des Moines, the plaintiff was struck and injured by an automobile moving west on Locust, driven by the defendant, Henry G. Baker. The petition alleges that such injury was occasioned without fault on the plaintiff's part by the negligence of both Henry G. Baker and his codefendant, William H. Baker, and that the injuries received by her were many and serious. The petition particularizes the acts and omissions constituting the alleged negligence, as being the failure on defendants' part to have chains upon the wheels of their automobile, although the street was icy and slippery; and the driving and operation of the car at a reckless or careless rate of speed. Further negligence is charged in the failure of the defendants

to sound the gong or give other warning of their approach, and that defendants saw plaintiff upon the crossing, and failed to stop or check their speed to prevent the collision. The defendants deny any negligence on their part, and say that the collision was occasioned by plaintiff's own negligence. Pending the trial of the case, plaintiff amended her petition by alleging that defendants, on reaching Seventh Street, suddenly turned northwest, and were moving in that direction when they struck the plaintiff. She further alleged that the car by which she was injured belonged to the Baker Machinery Company, and was at this time being driven from the company's factory by Henry G. Baker to his home (which was in the direction of and near the home of the defendant William Henry Baker), with the consent and approval of the latter, and that the destination of such car was a garage at his home. Plaintiff charges that William Henry Baker was the bailee of the car, and that Henry G. Baker in driving it was his servant or agent, for whose negligence he was liable. At the close of the testimony, the defendant William Henry Baker moved for a directed verdict in his favor, on the ground that no evidence had been produced on which a verdict against him could be sustained. The motion was overruled, and error is assigned upon the ruling. A verdict was returned for plaintiff against both defendants for $3,000, and a motion for new trial was denied as to each. The several errors assigned by the defendants and each of them are considered in subsequent paragraphs of this opinion, so far as the same is necessary for the proper disposition of this appeal.

I. Did the court err in refusing to direct a verdict in favor of William Henry Baker? Of this, an examination of the entire record leaves no room for reasonable doubt. The

1. NEGLIGENCE:
imputed negligence: absence
of control:
automobile accident.

original petition on which plaintiff proceeded to trial alleged that the car, at the time of the petition, was occupied by both defendants. The undisputed evidence conclusively

shows that the father, William H. Baker, was not in the car in question at all, but was riding in another car, driven by another person, following a short distance behind the car which collided with plaintiff, and arrived at the scene very soon thereafter. It was also shown without dispute that the father and son were both officers or employes of a manufacturing corporation doing business in East Des Moines, and they lived in separate homes in West Des Moines. William H. Baker, who was president of the corporation, had at least one or two other sons also employed at the factory. The corporation owned the motor car here in question for use in and about its business, and the elder Baker and his sons were in the habit of using it severally and in common to ride back and forth between their homes and the factory. Only one of the defendants, William H. Baker, had a garage at his home and the car when on the west side was kept or stored there. On the evening of the accident at the close of the day's work, this car was standing in front of the factory, as was also another car, owned by a son-in-law of William H. Baker's. The defendant Henry G. Baker, with one of his brothers and a brother-in-law, entered the car belonging to the company and started homeward. William Henry Baker entered the other car with his son-in-law and followed in the same direction. They continued in this order until the collision took place at West Locust and Seventh Streets. After the accident occurred, and plaintiff had been taken to her home, the defendants went to their several homes, and the car was put up at William Henry Baker's garage, and was used by him in returning to the factory on the following morning. Now this constituted the entire showing upon which it is sought to charge the elder Baker with liability in this case. Its utter insufficiency for that purpose is so clear from the simple statement of the facts that argument is quite superfluous. There is not a word of evidence tending to indicate, directly or indirectly, that Henry G. Baker, who was driving the car, and whose negligence, if any, was the cause

of plaintiff's injury, was the servant or agent or representative of his father or that he was then engaged in or about his father's business or service or was subject in any degree to his father's orders or control. Their family relationship was of a close and intimate character, and, being both employed in the business of the same corporation, and living in the same neighborhood, it was a natural thing that they should frequently travel together between their homes and place of work, and, when convenient, should use the same vehicle. When so traveling together in the same car, they might or might not have been jointly or severally liable for negligence in its management, according to the peculiar circumstances attending an injury to a pedestrian; but upon what theory, when the father and son were in different cars, neither party having any vestige of control or right of control over the other, the negligence of the driver of one car can be imputed to a passenger riding in another, would seem to be past finding out. On this subject, the court charged the jury as follows:

"You are instructed that the burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that, at the time in question, the defendant Henry G. Baker was driving said car for and on behalf of the defendant Wm. Henry Baker. You are further instructed that, if the defendant Henry G. Baker at said time was driving said car for the purposes and benefit of the defendant Wm. Henry Baker, then and in that event, he would be the servant, agent or representative of the defendant Wm. Henry Baker. If you fail to find that said Henry G. Baker was acting as the servant, agent or representative of the defendant Wm. Henry Baker, in driving said car at said time, then you will return your verdict for the defendant Wm. Henry Baker. If you find that said Henry G. Baker was acting at said time as the servant, agent or representative of the defendant Wm. Henry Baker, then, in that event, the said Wm. Henry Baker would be responsible for the negligent acts, if any, of said Henry G.

Baker, and the instructions following would apply to both defendants."

Assuming, though not deciding, that the quoted instruction would be correct in a case calling for the submission of such question to the jury, there was no fact or circumstance in evidence from which the jury could be permitted to find the existence between the defendants of the relation of master and servant, or of principal and agent; and, by the refusal to direct a verdict for the father and by the giving of the quoted instruction, the jury were turned loose to hunt for a verdict in the wide field of conjecture. The motion for a directed verdict in favor of this defendant should have been sustained.

II. The proposition argued in favor of the defendant Henry G. Baker, that there is no evidence of negligence on his part in connection with the accident, and that plaintiff was herself negligent as a matter of law, is not well founded. It is to be admitted that the circumstances of the collision, as detailed by the decidedly greater number of witnesses, strongly tend to show that the car was being driven slowly and with due care, and that plaintiff, when safely across the car's line of travel, became confused, lost her head, and suddenly turned back into the danger, which she would have wholly escaped had she pursued her course; but there was some dispute upon both propositions. One witness testifies quite positively that the car was being driven at a rate of speed which was excessive and reckless at such a time and place. He further swears that defendant admitted to him that the car was moving rapidly because of the lateness of the hour and their anxiety to get home. The testimony of this witness is marred by many inconsistencies and contradictions, but it was still within the province of the jury to give him credit, and we think the court could not properly have directed a verdict for this appellant on the ground of an entire want of evidence to support the claim sued upon.

2. TRIAL: directed verdict: contradictions in testimony of witness: effect.

III.   By an amendment to the petition pending the trial, the plaintiff pleaded the existence of a city ordinance, one section of which, the abstract states, was offered in evidence.

3. MUNICIPAL COR-
PORATIONS:
use of streets:
pedestrian's ·
right of prece-
dence at cross-
ings: negli-
gence.

The record so made, while showing that defendant's objection to the offer was overruled, does not state, either in *haec verba* or in substance, the provisions of the offered section.   True, as a matter of pleading, plaintiff attached to the amendment of her petition an alleged copy of the ordinance, but this was put in issue by a denial, thus placing the burden upon the plaintiff to show it.   However, as this objection is not specifically urged by the appellant, and the trial court instructed the jury on the subject of the ordinance regulation, we will take it for granted that the provisions of that particular section relied upon were submitted to the jury in the form in which it was pleaded.   That section provides, among other things, that "pedestrians are given the right of way over the crossings at street intersections; and, upon approaching a crossing or intersecting ways and also upon traversing the crossing or intersection, the person in control of an automobile or other motor vehicle . . . shall sound a signal . . . to give warning to other vehicles and to pedestrians of his approach . . . and shall not move at a greater speed than is reasonably safe and proper, having regard to the rights of pedestrians and to the traffic and use of intersecting ways."

Concerning the effect of this ordinance, the court instructed the jury as follows:

"You are further instructed that, by an ordinance of the city of Des Moines, Iowa, pedestrians are given the right of way over crossings at street intersections; and you are instructed that, under said ordinance, the plaintiff had a right to cross over said crossing at Locust and Seventh Streets, if she was attempting to cross said intersection on the crossing, as defendants' automobile approached the crossing; and it was the duty of the defendants to observe such right of way

of plaintiff, and, upon approaching said crossing, to have such machine so under control as to grant such right of way, and a failure so to do would be negligence upon the part of the defendants. The defendants would have a right to pass behind the plaintiff after plaintiff had gone beyond the line upon which the said automobile was proceeding, if you find she had passed beyond said line, but in so doing defendants must exercise ordinary care and prudence; and plaintiff would have a right to turn on said crossing and proceed the other way, but in so doing plaintiff must exercise ordinary care and caution, in which event it would be the duty of the defendants to drive such car and have it under such control as an ordinarily careful and prudent person would, under the circumstances, to avoid injuring the plaintiff, and a failure to so pass and drive, and have said automobile under control, would constitute negligence."

It will be observed that this provision, when read as a whole, does little more than put into the form of a city ordinance the common-law rule that, while pedestrians and drivers of moving vehicles have an equal right to use the public streets and crossings, each must exercise such right with reasonable regard for the convenience and safety of others. If, owing to the different methods of locomotion and travel, the law recognizes a right of precedence in the use of a crossing, it does not mean that the persons having such right of way may loiter upon or obstruct the crossing to the exclusion of others or to the interruption of street traffic, but rather that, when two or more persons moving in different directions approach a crossing at the same time, or in such manner that, if both or all continue their respective courses, there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so. So if we assume that plaintiff, as a pedestrian, had already entered upon the crossing as the defendant Henry G. Baker approached it in an automobile, or if she was traveling in

that direction and so near that defendant could not take the crossing before her without exposing her to danger, then it was his duty to stop, or to so reduce his speed as to permit her to pass in safety. On the other hand, if he had his car under proper control, and, as he approached the intersection, saw plaintiff crossing Locust Street from the north to the south, and saw that she had proceeded far enough in that direction to permit him as a reasonably prudent person to drive over the crossing behind her, there is nothing in the rules of the common law or in the statute or ordinance which forbade him to do so, nor was he bound to anticipate that plaintiff, having safely crossed his line of approach, might suddenly change her mind or become panic stricken and turn back into collision with his car. We do not say that such was the fact in this case, but there was abundant evidence upon which the jury could have so found, and we think the jury should have been specifically and carefully charged concerning that feature of the record.

4. MUNICIPAL CORPORATIONS: use of streets: simultaneous use of crossing: anticipating unreasonable possibility: negligence.

The instruction given by the court, and especially the closing portion thereof, beginning with the words, ''The plaintiff would have a right to turn on said crossing and proceed the other way,'' is, in our judgment, not to be approved. It is perhaps possible for a lawyer to read and to construe it in harmony with the law as we have already stated it, but we think it very certain that a jury of laymen must acquire therefrom an exaggerated conception of the obligation of the defendant to anticipate a sudden reversal of the plaintiff's line of travel upon the crossing. Giving the instruction its strict literal effect, an auto driver approaching a crossing on which a woman is moving in either direction could hardly hope to escape the imputation

5. TRIAL: instructions: form, requisites, and sufficiency: exaggerated prominence of particular matter.

6. MUNICIPAL CORPORATIONS: ordinances: reasonableness: relative rights and duties at street crossings.

of negligence without stopping and waiting until she had fully cleared the entire length of the crosswalk and made it certain she would not turn back. Such is not the law; and, were the ordinance to be so construed, it would be void for unreasonableness. Of course, if such sudden and unlooked-for change of direction takes place, and the driver of the vehicle sees it in time, or ought to see it in time to avoid accident, and fails to do so, he may well be chargeable with negligence; but the court's charge to the jury does not thus limit his liability.

IV. On the subject of the plaintiff's physical condition at the time of the trial, Dr. G. H. Hill was examined as an expert in her behalf. He said at the outset:

7. EVIDENCE: opinion evidence: hearsay forming basis of opinion.

"I met the plaintiff day before yesterday, and made an examination of her touching her nervous system. From my observation, I believe she is suffering with nervous prostration."

With this conclusion as a foundation, counsel then framed hypothetical questions embodying plaintiff's version of the facts as to her prior state of health, the alleged circumstances of her injury and of her condition since that time, and asked as to the effects of such experience upon the nervous system of the sufferer. He then continued with the following question:

"Q. Taking into consideration the hypothetical question put to you respecting the person, and then taking into consideration the further fact that the person attempted to be described in the hypothetical question is the plaintiff, whom you have recently examined, and found her nervous system in the condition that you have described it to be in, assuming that she had passed through the experience detailed in the question, you may tell the court and jury whether, in your opinion, her nervous system, because of these matters referred to, assuming them to be true, and tak-

ing into consideration her present condition, is or is not her nervous system permanently impaired and injured?"

Objections to the interrogatory being overruled, the witness answered:

"I believe the nervous system of the witness will never be as strong and good in her life as it was before the injuries were received."

On cross-examination, Dr. Hill says he never examined the plaintiff except on the one occasion mentioned, and that he made no physical examination to verify the existence of physical pain and suffering. He adds:

"In determining Miss Switzer was suffering from nervous breakdown, I made my diagnosis and determined that question from the information I obtained from Dr. Lynch and Mrs. Hedges. I made a mental examination by asking a lot of questions with regard to health and habits and sleep, and with regard to what the plaintiff can do and what she formerly did and is unable to do now. Whether she could sleep or not, I determined from her statements. The same is true as to what she could and could not do. I made out the diagnosis from what the plaintiff, Mrs. Hedges and Dr. Lynch told me."

The objection made to this testimony is that the diagnosis stated by Dr. Hill is not competent evidence, because it is confessedly based upon hearsay, instead of facts coming under his own observation; and, as this diagnosis so derived was embodied in the hypothesis upon which the further opinion of the witness is founded, the testimony or opinion elicited is not entitled to any consideration. The question thus presented to the court is not, as counsel for appellee seem to think, whether expressions of present pain and suffering on part of plaintiff were admissible in evidence. The competency of such evidence, as a rule, is too well settled to permit of argument. Neither is it a question whether Dr. Hill, as an expert, could properly state his opinion based upon a personal examination of the plaintiff, or his opinion

based upon a properly framed hypothesis or assumption of pertinent facts. Of the competency of such opinion as evidence, there can be no doubt. But the thing we have here to consider is, first, whether the admitted basis upon which the diagnosis was made and the circumstances under which it was made do not exclude it from the category of admissible opinion evidence. The objection, if any, does not go to the qualification or experience of the expert, but to the sufficiency of the grounds upon which his opinion is rendered. It will be remembered that Dr. Hill appears never to have treated the plaintiff professionally, and made no examination of any kind except what he speaks of as a "mental examination," consisting of a series of questions concerning the history of her case and the differences, if any, between her physical and nervous condition before and after her injury. This interview was had but one or two days before the trial, and its evident purpose was to qualify the doctor to testify as a witness in her behalf. Such purpose was entirely legitimate, and reflects no discredit on the plaintiff or witness; and, had the doctor found such symptoms of such observable abnormal condition as led him to the conclusion that she was afflicted with nervous prostration, then unquestionably his testimony to that effect would be entirely competent. But he expressly states that he made no examination except to get from the plaintiff her version of the history of the case, and upon this information, supplemented by other statements from Dr. Lynch and Mrs. Hedges, his opinion was formed. The witness does not state what facts he ascertained from the plaintiff or from Dr. Lynch or from Mrs. Hedges. That an opinion so expressed is not competent evidence is the view approved by many authorities. The recognized rule in Illinois is that "the opinion of the physician is not competent evidence where it is based upon self-serving statements by the patient, not made in the course of treatment, but with a view of enabling the physician to testify in reference to the physical condition of the patient." *Coburn v.*

*Moline, E. M. & W. R. Co.,* 243 Ill. 448. In *People v. Strait,*
148 N. Y. 566, the court, in rejecting the expert opinion
evidence of the defendant's sanity, points out that the opinion
was founded, in part at least, on statements made by the
defendant himself, and that the facts so ascertained were not
disclosed by the witness in his testimony, and says:

"It was essential that the jury should be informed as
to the facts upon which the expert based his conclusions in
order to determine whether they were well founded. If the
facts were not disclosed, his conclusions could not be con-
troverted. We might have been deceived by a false state-
ment prepared for the occasion, and for the purpose of mak-
ing him a valuable witness upon the trial."

As we have already noted, the record in this case con-
tains no statement of the information received by the witness
from Dr. Lynch or Mrs. Hedges, or indeed from the plaintiff
herself, and shows that he was not prepared to express an
opinion based upon his own knowledge of plaintiff's condi-
tion. This is very clear from the admitted fact that he never
treated plaintiff professionally, and that he made his diag-
nosis wholly upon statements made to him by the persons
above named. In *Weatherbee's Exr. v. Weatherbee's Heirs,*
38 Vt. 454, the expert witness, as in the case at bar, relied in
part upon facts related to him by another physician, and the
court held it inadmissible, saying in substance that the opin-
ion of an expert is competent, if based upon facts which the
evidence tends to establish; but the jury should know upon
what facts the opinion is founded, for its pertinence depends
upon the jury's finding the facts to be true. Mr. Abbott,
in his Trial Evidence, p. 117, Note, gives the rule as follows:

"A medical witness must give the facts on which his
opinion is founded, in connection with his opinion. If those
facts necessarily include information given him by the attend-
ants of the patient, his opinion is not competent, for those
communications are hearsay."

In *Stevens v. People* (Ill.), 74 N. E. 786, the court, con-

ceding the admissibility of testimony of a patient's exclamations or statements indicating present suffering, adds:

"We know of no well-considered case where it is held competent for the physician to testify that he reached his conclusion or formed his opinion as to the ailment or physical condition of the patient from the cause or history of the injury, ailment or disease as narrated by the patient."

Quite in point is the case of *Vosburg v. Putney,* 78 Wis. 84. There the witness expressed an opinion which he said was based upon the "history of the case" as it was given to him two weeks after the injury. Referring to this testimony, the court says the witness' answer shows his incompetency to answer the question.

"He answered it 'under the history he learned at the time.' What facts about the case did he learn, and from whom did he learn them? Were they true or false? He does not even give his opinion upon the testimony of other witnesses in court, and no hypothetical statement was submitted to him. No foundation recognized by any authority was laid for his answer to such a question, and he did not show himself competent to answer it."

In the case before us, there was a hypothetical statement submitted to the witness; but, for reasons to which we shall later refer, we think it was equally objectionable. · Says the Wisconsin court:

"The jury should in every case distinctly understand what are the exact facts upon which the expert bases his opinion." *Bennett v. State,* 14 N. W. 912.

In *Miller v. St. Paul City R. Co.,* 62 Minn. 216, we find a record much like the one now under consideration. The action was for the recovery of damages for personal injury; and, shortly before the trial came on, plaintiff called a doctor, who made an examination of her to qualify himself to testify as an expert. On the witness stand, the physician testified that the opinion expressed by him was "based on his examination and the history of the case given by the attending phy-

sician, Dr. Marshall.'' The testimony of the expert was held to have been improperly admitted, and in so holding, the court uses this language:

"It is settled beyond controversy that a medical expert cannot be allowed to give his opinion on information which he has obtained out of court from third parties other than the patient."

See also *Heald v. Thing*, 45 Me. 392, 395; *Rouch v. Zehring*, 59 Pa. 74; *United States v. Faulkner*, 35 Fed. 730; *Delaware, L. & W. R. Co. v. Roalefs*, 16 C. C. A. 601; *Atchison, T. & S. F. R. Co. v. Frazier*, 27 Kans. 463; *Kreuziger v. Chicago & N. W. R. Co.*, 73 Wis. 158. It is not necessary in this case to hold, and we must not be understood as holding, that a physician called to treat a patient may not, in making his diagnosis, properly consider such patient's statement of her case and her condition, together with the statements of other attending physicians concerning the case, or that an opinion based upon his own observation and judgment as thus enlightened is not competent evidence in a proper case. Upon the record here made, we need go no further than to hold that, where a party alleged to have been injured calls in an expert for the purpose of enabling him to testify in her behalf, such expert being a stranger who has never treated her professionally, and makes no examination of the patient except to question her in regard to her past and present condition, and to obtain the reports or statements made by others concerning such conditions, his opinion, based wholly or in part on such information, is not competent evidence, and should be excluded from the jury.

The error in this respect was in no manner cured by the hypothetical question put to the physician; for it required him to base his opinion not only upon the series of assumed facts therein set forth, but also to consider the further fact that the person attempted to be described in the hypothesis "is the plaintiff whom you have recently examined and found

8. **Evidence:** opinion evidence: opinion based on both competent and incompetent basis: effect.

her nervous system in the condition that you have described it to be in.'' In other words, the interrogatory calls for an opinion based, in part at least, upon testimony or assumption of facts which we find could not properly be admitted in evidence, and, under well-settled rules, an opinion so elicited is not entitled to any consideration. It should be added that some members of the court are of the opinion that a medical expert may properly testify to his diagnosis based upon the history of the case as made to him by the patient, but may not found his opinion upon statements to him by third persons. For the purposes of this case, it is not necessary that we decide upon the admissibility in evidence of a diagnosis of the kind first mentioned, because the expert witness admittedly drew his conclusions in part from information derived from persons other than the plaintiff. Other exceptions taken by the appellants and argued in the briefs are such only as are not likely to arise on a new trial, and we will take no time for their consideration.

For the reasons hereinbefore expressed, the judgment below must be reversed and the cause remanded for a new trial.—*Reversed and remanded.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.