FROST  v.  ROSECRANS.

1. **Fraudulent Conveyance of Chattels:** EVIDENCE OF THE KNOWLEDGE AND MOTIVE OF THE MORTGAGEE.  Where the validity of plaintiff's chattel mortgages was assailed on the ground of fraud, it .was proper to allow him to state as a witness that he did not know that they were made by the mortgagor with intent to defraud his creditors, and that he himself had no such motive in taking them.

2. **Evidence:** PRACTICE: REBUTTING IRRELEVANT BUT PREJUDICIAL EVIDENCE.  Where the court allowed defendant to introduce evidence of transactions irrelevant to the issue, but which tended to prejudice the plaintiff's rights in the case, it was error to deny the plaintiff the opportunity to rebut such evidence.

3. **Fraudulent Conveyance of Chattels:** INSUFFICIENT EVIDENCE. The verdict in this case, holding that the chattel mortgages in question were fraudulent, *held* to be without any support in the evidence.

4. **Chattel Mortgage:** PURCHASE AT DISCOUNT: NO EVIDENCE OF FRAUD. A chattel mortgage valid in its inception is not rendered fraudulent because sold at a discount, and evidence of the price paid for it is immaterial.

*Appeal from Cerro Gordo Circuit Court.*

SATURDAY, JUNE 6.

THIS is an action of replevin, in which the plaintiff claims to be the owner of certain store-goods and merchandise, which the defendant held as sheriff upon a writ of attachment, at the suit of a creditor of one Salisbury.  The plaintiff's claim is founded upon three chattel mortgages executed by said Salisbury, and possession of the goods under said mortgages.  The defendant claimed that the said mortgages were fraudulent, because they were intended by the parties thereto to be the means by which Salisbury could cheat, hinder, delay or defraud his creditors, and that the transaction amounted to a general assignment by Salisbury, with a fraudulent preference for plaintiff and other creditors. There was a trial by jury, which resulted in a verdict and judgment for the defendant.  Plaintiff appeals.

*Bush, Hurn & Kelley*, for appellant.

*Stanbery & Clark* and *Blythe & Markley*, for appellee.

ROTHROCK, J.—For several years prior to the second day of March, 1883, J. H. Salisbury was engaged in keeping a general store at Clear Lake, Iowa. The plaintiff was during said time, and is now, a banker at the same place. On said second day of March, 1883, Salisbury executed to the plaintiff two chattel mortgages upon his stock of goods. One of the mortgages was for $3,200, and the consideration therefor was a loan of $1,200 in money, and a previous debt of $2,000 owing by Salisbury to Frost. The other mortgage was in the sum of $1,863.98, and was executed to Frost to secure the claims of certain creditors, which were then in Frost's hands for collection. On the ninth day of March, 1883, Salisbury executed another mortgage upon the said stock of goods to the North Star Boot & Shoe Company, to secure an indebtedness of about $1,000. These mortgages were all duly recorded very soon after they were executed. The defendant as sheriff levied the attachment on the goods on or about April 4, 1883, some time after all of the mortgages were recorded. The plaintiff became the owner of the North Star Shoe Company mortgage by assignment, before the levy of the attachment. There is no question but that all of these mortgages were made to secure valid debts and claims against Salisbury; and the evidence is without conflict that, for some time before the attachment was levied, Frost was in full possession of the goods, and that he held such possession under and by virtue of the chattel mortgages.

I. The defendant alleged that these mortgages were fraudulent as to the creditor represented by him, and the burden **1. FRAUDU- LENT convey- ance of chat- tels. evidence of the knowl- edge and mo- tive of the mortgagee.** was upon him to prove the alleged fraud. After the defendant had introduced his evidence in chief, the plaintiff was called as a witness in his own behalf, and in the course of his direct exami-

nation he was asked these questions: "*Question.* Did
you know at the time these mortgages were made that Mr.
Salisbury made them with any intent to delay, defraud
or hinder anybody's creditors? *Answer.* No, sir.  *Q.* Did
you have any such intention at that time? *A.* No, sir."
The defendant objected to these questions and answers, and
moved that they be stricken out.  The motion was sustained,
and the plaintiff excepted to the ruling, and assigns it as
error.  We think the ruling was clearly erroneous.  It is a
general rule that, where the intention or motive of a witness
is a material question in the case, the witness may state what
his intention or motive was.  Whart. Ev. (2d Ed.) §§ 35,
482, and authorities cited.  It cannot be questioned that the
intent of the plaintiff, and his knowledge of the intent of Sal-
isbury, were most important and material questions in the
case.

II.  The defendant was permitted to show that, about
eighteen months previous to the execution of the mortgages
in question, Salisbury executed certain chattel
mortgages upon his stock then in store, and that
said mortgages were not recorded, and that the
plaintiff had admitted that they were not recorded.
The plaintiff in his testimony denied that he had so admitted,
and he offered to introduce the record of mortgages, which
showed that one of these old mortgages was recorded.  The
court, upon the motion of the defendant, excluded the evi-
dence.  We think it should have been admitted as evidence,
in view of what had been introduced by the defendant upon that
subject.  We do not think that the fact that Salisbury exe-
cuted certain mortgages to the plaintiff in the year 1881 was
at all material to the issues in this case.  Whatever they may
have been, there is no question but that the mortgages now
in controversy were founded upon a sufficient consideration,
and they should be judged upon their own merits, and the
intention of the parties at the time they were made.  But, as
the court permitted an inquiry to be made into the prior

2. EVIDENCE:
practice: re-
butting irrele-
vant but pre-
judicial evi-
dence.

mortgages, and the impression to go to the jury that by keeping them from record the parties thereto were guilty of secret and questionable transactions, the plaintiff should have been allowed to rebut such inference, if he could do so.

III. It is insisted that the verdict is without support in the evidence. We think this is true, especially as applicable to the mortgage executed by Salisbury to the North Star Boot & Shoe Company. The consideration of that mortgage is not in any manner challenged. It was executed by Salisbury at the instance of one Mansfield, an agent of the shoe company. There is not one word of evidence impeaching this mortgage in its inception. Mansfield did just what any other collection agent would have done. He took such security for his principal's claim as he was able to obtain, and it is idle to charge him or his principal with any fraudulent act or intent. The evidence as to how much the plaintiff paid for this mortgage should not have been admitted. The mortgage was a valid lien upon the stock of goods, prior and superior to the attachment; and if the plaintiff discounted it, or obtained it for less than it was given to secure, his act in so doing would not render the mortgage fraudulent.

3. FRAUDULENT conveyance of chattels: insufficient evidence.

4. CHATTEL mortgage: purchase at discount: no evidence of fraud.

REVERSED.