J. J. PENTONY, Administrator, Appellee, v. FRANK DUDLEY et al., Appellants.

NEGLIGENCE: Proximate Cause—Insufficient Evidence. Evidence reviewed, concerning an automobile accident from which a person emerged, apparently, without physical injury of any importance, death ensuing some two months later, *of Bright's disease,*—a disease not of traumatic origin,—and held insufficient to show that said accident had anything to do with said death.

*Appeal from Delaware District Court.*—E. B. STILES, Judge.

APRIL 1, 1924.

ACTION for damages by an administrator for personal injuries resulting, as alleged, in the death of the decedent. The defense was, in substance, a general denial. There was a verdict for the plaintiff, and the defendants appeal.—*Reversed.*

*Trewin, Simmons & Trewin,* for appellants.

*Yoran & Yoran,* for appellee.

EVANS, J.—The nature of the accident was a collision between the defendant's automobile and the buggy in which the decedent was riding. It occurred at the corner of an intersection of Franklin and Union Streets in the city of Manchester, Iowa, on June 23, 1919. The defendants are husband and wife. Both occupied the automobile at the time of the collision, the wife being the driver. As she approached the buggy, she attempted to bring the automobile to a stop by putting on the brakes. She failed to accomplish the stop before contact with the buggy, with the result that the automobile collided slowly with the buggy at its right side, and pushed the same sideways for a few feet. This resulted in the crushing of both *left* wheels of the buggy. The decedent was riding on the left side of the buggy, and was necessarily involved in the fall, and was entangled in the wreckage. The horse was stopped immediately, and no further complications resulted. The decedent, being extricated, did not appear to have suffered any special injury, and was not herself conscious of any injury. Another buggy was provided, and she rode to her home, 15 miles distant. On August 9th following, a doctor was called to her assistance, who found her suffering in the last stages of Bright's disease, with 30 to 40 per cent albumen in the urine, from which cause she died on September 4th following.

The evidence was in conflict on the question of negligence and contributory negligence, and those questions were properly submitted to the jury. The instructions of the court are not challenged. One of the grounds of the motion for a new trial was misconduct of a juror. We think that the point made was without merit. The trial court properly overruled it. A petition for a new trial also was filed, and predicated upon the ground of newly discovered evidence. We think that such evidence was mainly cumulative, and that the refusal of the trial court to grant the petition was not an abuse of its discretion.

The serious question in the case is that of proximate cause. The trial judge recognized the gravity of the doubt upon this question, in overruling the motion for a new trial. He gave the following summary of the record on that question:

"What seems to this court to be a doubtful, a very doubtful, question is whether there is sufficient evidence connecting the

death of the decedent with the accident to justify submitting the question to the jury. The evidence of the physician who attended the decedent, and who testified in behalf of the plaintiff, is not highly satisfactory,—not entirely self-consistent,—though he does say that the decedent's sickness (which resulted in her death) was caused or aggravated by the injuries she received. Aside from the evidence of the physician, we have the testimony of several others, members of the family or acquaintances, to the effect that the decedent was able to do the usual work of a farm wife up until the time of the accident; that, immediately subsequent to the accident, she was complaining of her injuries, was unable to do her accustomed tasks, soon took to her bed, and continued bedfast until her death, which resulted a little over two months after the accident. There seems to be no question as to the fact that the decedent was suffering from Bright's disease prior to her death, and it seems to this court that it is very doubtful, as a matter of fact, whether there is sufficient evidence to establish that the injuries received in the accident were the cause of decedent's death. But the matter is a question of fact, and it is the opinion of this court that the testimony above referred to, together with the physician's evidence, is enough to make a jury question.''

The question confronting us is whether the trial judge correctly solved the doubt on that question. The decedent suffered no apparent external injury. No external evidences were ever discovered, save some black and blue spots upon her limbs and upon one of her toes. No internal injury was ever diagnosed. If she suffered any internal injury, no one knows or has any expert opinion as to what the nature of such injury was. She was an elderly lady, of the rather abnormal weight of three hundred pounds. According to the doctors on both sides, she must have been suffering from Bright's disease at and prior to the time of the accident. The first physician called to her aid was Dr. Howard, on August 9th. He called Dr. Guthrie, of Dubuque, into consultation. The diagnosis disclosed that she had reached an advanced stage of Bright's disease, and that she was beyond medical help, so far as final recovery was concerned. Whether the accident of June 23d was a cause of her death in any substantial sense was a question wholly of expert opinion,

to be predicated upon hypothetical statements of fact. If it can be said, upon this record, that there was sufficient evidence to go to the jury on this question, it must be found in the testimony of Dr. Howard. He was the only doctor examined by the plaintiff. Two doctors were examined by the defendants, whose testimony clearly negatives the probability of any causal relation between such accident and the subsequent death. The material part of Dr. Howard's testimony, as it related to this subject, was as follows:

"I was called to attend her. She was very much run down, and had a great deal of pain in her right thigh and leg. She said she was thrown out of,—not out of the buggy, but down between the wheels of the buggy, by an automobile striking the buggy. I attended her less than a month. She passed away about the 3rd to 5th of September, I think.

"Q. Did you make a physical examination of Mrs. Jefferson, to determine her—the cause of her sickness? A. Well, of course, she—this pain she complained of constantly, she was never out of that pain on her hip and thigh and leg. Q. That is what you doctors call subjective symptoms, rather than objective? A. Yes, sir,—well, there might have been objective symptoms in the first place,—I don't know; there was no ecchymosis; there was no mark on the body, that I could discern. I saw her about every day, and sometimes twice a day. I noticed the suffering, the pain, all came from that hip,—every bit of it; but then, she was gradually running down, and emaciated condition. *In my opinion, her sickness was caused or aggravated by the injuries she claims to have received.* She was suffering from some organic disease that existed prior to the accident. In my opinion, she had suffered a great shock. Q. Of her sickness, what was the immediate cause? A. Why, taking the totality of the symptoms *was brought on by the injuries she had received:* that is, she never had consulted a doctor, that I know of, before."

"I was first called to treat Mrs. Jefferson on the 9th of August. I examined the urine, and found it contained about thirty or forty per cent of albumen. This was two or three days after I was called. She kept on going down. She had no difficulty in voiding the urine, no suppression, no retention, no blood in the urine. I saw no evidence of a congestive chill or

of infection from rheumatism, neuralgia, or neuritis. The only chance for infection there was, there was a redness and fullness in the right inguinal region, low down, just below the pelvis. I am understanding your question, there was a fullness there, and some redness. She said that had been there, she had noticed it mostly since she was hurt, very likely, I.considered it was a pelvic abscess from—very likely from the coccyx,—that is, the end of the backbone. I think she had an injury when she got mixed up with this auto accident. ·Q. I thought you said yesterday there was nothing of that sort? A. I said there was no fibroid. She called it more of a fullness or burning than real pain in the right inguinal side; she complained of pain in the hip, leg, and back,—principally her right leg.''

It appears from the medical testimony on both sides that Bright's disease is not the result of traumatic causes. It may be caused by infections. If it can be said that the testimony of Dr. Howard on this question was sufficient to go to the jury, its sufficiency must be predicated upon two sentences which we have italicized in the quotation. It will be noted that these sentences purport to be an opinion predicated upon supposed injuries concerning which he had no knowledge whatever. Nor are such injuries described by anyone else. This witness prepared and signed the death certificate of the decedent. The sole cause of death ascribed by him therein was Bright's disease. At that time and prior thereto, it had never occurred to him that there was any other cause for the death, though he knew that his patient had been involved in the accident. In his diagnosis, he discovered no symptoms that were not attributable to Bright's disease. Members of the family did testify that, following the date of the accident, the decedent was more languid in her work, and that she gradually grew worse. Even this was consistent with the undisputed presence of Bright's disease. In considering the sufficiency of this evidence, we must not lose sight of the fact that no personal injury to the defendant is described or proved. Only the accident is proved. The alleged injury is proved only as a mere inference from the fact of the accident. The injury being thus inferred, it is further inferred that it must have been the cause of the death. True, it is permissible to prove the cause of death by circumstantial evidence. In so

doing, inference must not be piled on inference. If there were no other discoverable cause adequate to produce death, this fact would be an important circumstance tending to show that proved injuries caused the death. That circumstance is absent here. We are in the presence of an undisputed adequate and probable cause of death. Such primary cause is consistent with every circumstance put in evidence. We do not overlook that, even so, it would be permissible to prove that injuries sustained by the decedent *aggravated* the primary cause and *accelerated* its fatal result. But there was no less burden upon the plaintiff to prove the aggravation or acceleration. It would have been permissible to prove that the injuries sustained were of such a nature that they would be likely to cause such aggravation or acceleration. Such a showing would permit an affirmative inference by the jury. But this record contains no evidence which in any manner describes or locates the injury. There is no basis, therefore, for expert opinion as to whether the *alleged* injury was of such a nature that it probably would or could cause the aggravation or acceleration claimed. Proof of the mere fact of the accident, without proof of the injury, furnishes no proper hypothesis upon which expert opinion can be predicated. This, we think, is the fatal defect in plaintiff's case. The only evidence of any discoverable injury on the person of the decedent was the appearance of an abscess three days before her death. It is undisputed that even this was consistent with the progress of her fatal disease.

To sum up the record in brief form on this question, it is:

(1)    The decedent died of Bright's disease.

(2)    This disease had its origin prior to June 23, 1919.

(3)    It was an adequate and probable, if not inevitable, cause of ultimate death.

(4)    The burden was upon the plaintiff to show, not merely the accident, but also some injury which was adequate as a probable cause of aggravation of such disease or acceleration of its fatality.

To put it in still another way, it was necessary for the jury to find, upon proper evidence, that the death of the decedent would not have occurred on September 4th, but for the injury alleged to have been received on June 23d. It was incumbent

upon the plaintiff to produce sufficient evidence to sustain such a finding. This would require a showing that the alleged injuries were of such a nature as would probably aggravate the decedent's disease and accelerate her death. *Kerr v. Keokuk Water Works Co.*, 95 Iowa 509; *Trapnell v. City of Red Oak Junction*, 76 Iowa 744; *Andrews v. Railway*, 129 Iowa 162; *Neal v. Chicago, R. I. & P. R. Co.*, 129 Iowa 5; *O'Conner v. Chicago, R. I. & P. R. Co.*, 129 Iowa 636; 1 Sedgwick on Damages (9th Ed.), Section 112.

The very fact in this case that there was present a known and adequate cause of the death presents a case radically different in its method of proof from one wherein disability and death follow the happening of an accident to the person where no other adequate or probable cause for the death is discoverable. In such latter case, the sequence of events might be sufficient circumstantial evidence of proximate cause, even though the supposed injury were internal, and its diagnosis uncertain.

We reach the conclusion that the evidence in this case fails to furnish any basis either for expert opinion or for the finding of the jury that the alleged injury aggravated the disease of the decedent or accelerated her death. Opinion or finding to that effect upon this record is, in legal sense, a mere surmise. The judgment below must, accordingly, be reversed.—*Reversed and remanded.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.