Dale R. Pierce, Appellee, v. Henry J. Heusinkveld et al., Appellants.

No. 46320.

May 2, 1944.

Rehearing Denied September 23, 1944.

Paul W. Steward, of Des Moines, and Dyer, Jordan & Dyer, of Boone, for appellants.

Doran, Doran & Doran, of Boone, for appellee.

WENNERSTRUM, J.—Plaintiff, in an action at law, sought damages for claimed personal injuries sustained as the result of a collision between an automobile in which he was riding, owned and driven by his brother, and a motor truck owned by Henry J. Heusinkveld, who is one of the defendants, and driven by the other defendant, Henry G. Heusinkveld. In a separate count to his petition the plaintiff sought damages and judgment, by reason of an assignment of the claim of his brother for damages to his automobile and for loss of time from work. Several grounds of negligence were alleged in plaintiff's petition. He originally asked for damages in the amount of $1,050.35 in the first count of his petition, and in a second count he asked for the further sum of $46.75 as damages sustained by his brother. Thereafter the first count of his petition was amended, wherein he asked for damages in the amount of $2,050.35, and in a third amendment to his petition plaintiff claimed damages in the total amount of $10,068.35. The defendants in their answer denied generally any responsibility for the collision and the resulting damages. The court submitted the issues to the jury, which returned a verdict in favor of the plaintiff in the amount of $3,000. Defendants have appealed.

The collision which resulted in the litigation now before us for review occurred July 12, 1941, on what has been referred to as the Old State Road, at a point about four miles south and east of the city of Boone, Iowa. This road is a county trunk highway and extends in a general northerly and southerly direction. At or near the point where the two vehicles collided it is intersected by a road from the west only. It is the claim of the appellee that the car in which he was riding had entered the intersection and had left or was leaving the intersection when the collision occurred between the roadster in which the appellee was riding and the truck operated by Henry G. Heusinkveld.

It is the claim of the appellants, which is in part supported by the evidence, that the Heusinkveld truck, prior to the col-

lision, was proceeding in a southerly direction at a speed not exceeding thirty-five miles per hour. As a result of the collision between the vehicles previously referred to, the appellee, Dale Pierce, received injuries to his knee and bruises on the abdominal portion of his body. He received medical attention the evening of the accident and shortly thereafter was hospitalized for approximately one week. At the time of the trial, which was some nine months subsequent to the accident, the appellee had apparently recovered from the bruises received but had lost weight, was running a temperature, had evidences of high blood pressure and an irregular heart. There was medical testimony that these last-referred-to conditions were symptoms of tuberculosis. The consideration of the evidence presented in regard to appellee's claimed tubercular condition, and claimed errors relative to certain instructions, necessitate our detailed consideration of the questions presented.

I. Two of the claimed errors relate to instructions given by the court. It is the contention that there is not sufficient evidence to justify the submission of the instructions as given.

It is the claim of the appellants that the court was not justified in giving an instruction based upon one of the claimed specifications of negligence which charged the driver of the truck with failing to yield one half of the traveled way. It is also contended that the court erred in giving an instruction based upon appellee's specification of negligence that the brakes were not applied. We believe that these two claimed errors can be jointly commented upon.

In regard to the complaint made relative to the giving of the instruction as to the claimed failure of the driver of the truck to yield one half the traveled way, it should be kept in mind that it is the appellants' contention that this is an intersection case and the car in which the appellee was riding had not passed out of the intersection and had not reached a place on the highway where it could be claimed that the driver of the truck should have yielded him one half of the right of way. It is disclosed by the record that there is a variance in the testimony presented by witnesses for the appellants and the appellee as to the place where the accident occurred. There is also a variance in the testimony presented by the respective parties relative to the con-

dition of the brakes on the truck. Under the circumstances and the record as presented, we feel that the court was justified in submitting these two instructions. The particular complaint to the instruction relative to the brakes is that the appellee's original contention in his petition was that the driver of the truck failed to apply the brakes at all, when, in fact, appellee's evidence showed that, if anything, the brakes were applied but by reason of their defective condition the truck was thrown into the course of the car in which the appellee was riding. We feel that this contention is too discriminating in its interpretation of the facts as disclosed by the record.

We are conscious that it would be error to submit a ground of negligence not supported by the evidence. Jakeway v. Allen, 227 Iowa 1182, 290 N. W. 507; Porter v. Decker, 222 Iowa 1109, 270 N. W. 897; Isaacs v. Bruce, 218 Iowa 759, 254 N. W. 57. However, the statement found in Lee v. Conrad, 140 Iowa 16, 21, 117 N. W. 1096, 1098, seems quite applicable to the complaint made by appellants relative to these instructions. In this case it was said:

"The issues with reference to which the instruction was given appeared in the testimony, and that was enough to justify an instruction by the court."

The comments in Newbury v. Getchel & Martin Lbr. & Mfg. Co., 100 Iowa 441, 452, 453, 69 N. W. 743, 746, 62 Am. St. Rep. 582, are also applicable to the question now being considered. It was there said:

"The objections to it are that there is no evidence that Page told plaintiff that he should obey the orders and commands of Garrity, or that Martin knew that plaintiff was under the direction of Garrity, and was required to obey his orders.

"These objections are without foundation, for we think there is evidence to establish both propositions. It may be that the preponderance of it is to the contrary, but we are not dealing with a question as to the weight of the evidence. * * * If we were to consider the instruction apart from the evidence in the case, it is likely that it would be condemned. But, as applied to the evidence, it was a correct statement of the law * * *."

We do not feel that the evidence in this case was such that we can say that the instructions given were wholly without support in the evidence.

II. It is the further claim of the appellants that appellee's counsel was guilty of prejudicial conduct which deprived them of a fair and impartial trial. The complaint of the appellants relative to the conduct of appellee's counsel is not restricted to any one portion of the trial but is commented upon in connection with several instances that occurred. We shall quote a portion of the cross-examination of one witness and set out certain proceedings. We shall later comment upon the manner in which the trial was conducted. In the cross-examination of the appellants' witness Robert Blanchard, the following examination took place:

"Q. Did you have a liquor permit book then? A. No, I have never had one. Q. Did Wood? A. No. Q. Did Heusinkveld? A. Not to my knowledge, no. * * * Q. Did you go into any of the beer taverns after you went down town that night before you ate? A. No. Q. What? A. No. Q. You drink beer, don't you? A. Do I drink beer? Q. Yes. A. I—Mr. Steward: This is objected to as irrelevant and immaterial, not proper cross-examination. The Court: Well, overruled. Defendants except. A. Do I drink beer? I have tasted it, I am not an habitual drinker of beer, no. Q. Oh, maybe not, but you like a glass of beer now and then, don't you? A. Yes. Q. You had some that night, didn't you? A. No. Q. What? A. No. Q. Are you sure about that? A. Yes. Q. How can you be sure about that when you are not sure where you ate? A. I just am sure. Mr. Steward: This is objected to as argumentative, irrelevant and immaterial. The Court: Well you tell us in your own way. * * * Q. What were you boys going out to a skating rink at seven o'clock on the afternoon of July, 1941, for? Mr. Steward: Objected to as irrelevant and immaterial, repetition, he has already said they were going out there to skate. The Court: Well you tell us yourself. Defendants except. A. We were out to go roller skating. Q. What? A. We were out to go roller skating. Q. What did you go out so early for? A. I don't know why we were. Q. Roller skating didn't start until after it got dark, did it? A. I

don't know what time it started. Q. Oh, you had been there before, hadn't you? A. Once, I think. Q. When was that now? A. About a week before I think. Q. Yes. Where were you on the 4th of July? A. I think I was in Des Moines. Q. You think you were in Des Moines? A. Yes. Q. How did you get to Des Moines from Boone? Mr. Steward: If the Court please, I think this ought to stop some place. It is all irrelevant and immaterial and not proper cross examination. The Court: Well I can't tell what counsel is after, I suppose he is leading up to something, I don't know. Mr. Steward: Well he is certainly going a long ways around. The Court: Well that is true, but he usually has some purpose in it. Mr. Doran: That's right, you will find out before we get through where we are going. The Court: Well overruled for the present. Defendants except. Q. Well to save time I will forget the Des Moines trip. You are telling this jury now that you left from somewhere, you think it was Rudy's Cafe, at seven o'clock in the evening of July 12th, 1941, don't you?''

In the case of Maland v. Tesdall, 232 Iowa 959, 968, 5 N. W. 2d 327, 332, wherein appellee's counsel appeared for the plaintiff, we had this to say concerning the prejudicial conduct of counsel. The statements there made are applicable to the instant case:

''While it was proper for appellee to show the use of liquor by the driver and the other occupants of the car on the night of the accident, we think the bounds of propriety were exceeded. A prejudicial course of examination was pursued. Incompetent questions which assumed the existence of damaging facts were frequently asked. The questions and not the answers seem to have been considered important. Such questions were repeated despite the sustaining of objections thereto. See 39 Am. Jur. 80, 81, section 65. As bearing generally on some of the matters discussed herein, see Annotations 4 A. L. R. 414 and 78 A. L. R. 1438.''

There was no testimony introduced that in any way intimated that the witness or any of his associates had been drinking during the evening that the collision occurred. To infer that this

was the case could have no other effect than to result in prejudice to the appellants' cause.

Further testimony of which complaint is made, and also of the conduct of appellee's counsel, relates to the examination of certain doctors called by the appellee. In connection with this phase of the case it should be kept in mind that appellee in his original petition asked for damages in the amount of $1,050.35 in the first count of his petition and in the second count he asked for the further sum of $46.75 as damages sustained by his brother. Thereafter the first count of appellee's petition was amended, wherein he asked for damages in the amount of $2,050.35, and in the third amendment to his petition appellee claimed damages in the total amount of $10,068.35.

In the examination of the medical witnesses there was testimony to the effect that the doctors suspected that the appellee was suffering from tuberculosis, but each of them testified that he could not tell whether the appellee was in the early stages of pulmonary tuberculosis or not and that it would necessitate the taking of an X-ray picture to ascertain this fact. There was no testimony presented which in any way showed any causal connection between the collision of the automobile and the truck and the claimed tubercular condition of the appellee. Following the examination of the doctors, wherein there was testimony as to the suspicion of a tubercular condition of the appellee, the following proceedings in the presence of the jury transpired:

"Mr. Doran: If Your Honor please, in view of the examination of Dr. Westfall and Dr. Deering of the plaintiff in this case, which we did not have the benefit of until this morning of April 3rd, 1942, we now ask the Court to declare a recess of this trial until Monday afternoon at one thirty, for the purpose of having X-rays taken and further examination. Mr. Steward: Your Honor, we resist the application. It seems to me this is a little bit late. The Court: Do you have any other evidence? Mr. Doran: That will be all of our evidence. The Court: Then you rest subject to—Mr. Doran: Yes. The Court: Very well then, the plaintiff rests at this time subject to—Mr. Doran: Your Honor, might I before the recess have permission to file an amendment to our petition asking additional damages on ac-

count of the examination, and may we have permission to file an amendment to the petition increasing the amount of damages claimed in the original petition as amended to the sum of $10,-068.35? The Court: Well it will be time enough to determine whether or not the case should be opened up for further testimony when Monday comes, but in the meantime the defendants can go ahead with the defense. Mr. Doran: Your Honor, the reporter tells me that I interrupted the Court, and I am sorry for that, when I asked that the matter be continued so far as the plaintiff's case is concerned until we have opportunity to have these X-rays taken. I didn't mean to interrupt the Court with respect to that request, and we rest subject to that request so far as the plaintiff is concerned. The Court: Very well. Mr. Steward: Before we go on, is it understood that the plaintiff has rested with the exception of that request about additional medical testimony? Mr. Doran: That's right. The Court: That is my understanding, and it is so ordered."

At a reconvening of the trial the following Monday, the following proceedings occurred in the presence of the jury:

"Mr. Doran: I wonder if I might make a little statement in the presence of the jury in view of the request I made of the Court last Friday? I asked this Court to continue the case until Monday, until such time as we could have the boy examined. Mr. Steward: Just a moment, please, we object to counsel's statement as being improper and incompetent, irrelevant and immaterial. The Court: I don't know what he is going to say. Mr. Steward: Well we object to him making a statement in the presence of the jury unless it is supported by the evidence in this case. The Court: Well so far I guess he is telling the truth Mr. Doran: No, I don't think I have lied yet. The Court: But I don't know what he is going to do. Mr. Steward: I don't expect counsel to lie, but I don't think he should be making any statement here in the presence of the jury as to what his investigations disclosed or didn't disclose. If he has some additional evidence I presume the jury should be permitted to hear it. Mr. Doran: I just was going to say that I had made a request that this matter be continued over for the purpose of allow-

ing us to introduce additional evidence, and so far we haven't been able to get hold of a doctor to examine our client, so I will have to forego that request. The Court: Very well. Mr. Doran: I don't think that hurt you very much. Mr. Steward: It didn't hurt me a bit. The Court: You were just afraid it was going to hurt you. Mr. Steward: I didn't think he would say it if it wasn't going to hurt me. Mr. Doran: You would be surprised.''

In connection with the incidents disclosed by the record heretofore set forth, it should be kept in mind that appellee's counsel had asked for a postponement of the trial ''for the purpose of having X-rays taken and further examination.'' The record discloses that a Dr. Whitaker did make an examination of X-ray films of appellee's chest and made a report to appellee's counsel. It is true that Dr. Whitaker did not have an opportunity during the week-end recess to examine the appellee. However, from the record heretofore set forth, the application for a recess was asked primarily for the purpose of having X-ray pictures taken. In the statement made to the jury by counsel for appellee the jury was inferentially led to believe that it was impossible to obtain the pictures. The failure of counsel to fully disclose the true situation under all the circumstances cannot be commended.

We cannot approve of the conduct of appellee's counsel and do not approve of the manner in which the trial court handled the several situations of which complaint is made. It is apparent to us that, during a portion of the trial, appellee's counsel engaged in conduct which was prejudicial to the obtaining of a fair trial by the appellants. We feel that it is within our province to criticize such conduct and to penalize the litigant whose counsel engages in such unnecessary tactics. There is no reason why a trial cannot and should not be carried on in a dignified and highly judicial manner. It is the duty of the trial court to so rule on proper objections made that prejudicial matters will not develop. The interest of counsel in his client's cause does not justify the introduction of prejudicial questions and of prejudicial proceedings.

A further statement in Maland v. Tesdall, supra, 232 Iowa 959, 967, 5 N. W. 2d 327, 331, can well be repeated here. We there stated:

"A trial should be a dignified presentation of issues, a good-faith effort to ascertain the truth upon which the rights of litigants depend, and not a display of ill will or ridicule. Whatever does not contribute to the proper purposes of the trial should be scrupulously avoided. Anderson v. High, 211 Minn. 227, 300 N. W. 597, 600; Rian v. Hegnauer, 210 Minn. 607, 299 N. W. 673, 674, 675."

Further authorities that bear upon the question of prejudicial conduct are:

Henry v. Sioux City & P. Ry. Co., 66 Iowa 52, 56, 23 N. W. 260; Hood v. Chicago & N. W. R. Co., 95 Iowa 331, 64 N. W. 261; George, Weeks & Co. v. Swafford Bros., 75 Iowa 491, 39 N. W. 804; Vanarsdol v. Farlow, 200 Iowa 495, 497, 203 N. W. 794.

Inasmuch as this case will probably be retried, we deem it advisable to comment briefly on other claimed errors. Thereby the trial court will have a guide if the same questions arise in subsequent proceedings.

III. One of the claimed errors is that the trial court refused to admit an exhibit offered by the appellants which was a shop record showing certain work done on the brakes of the appellant's truck shortly before the collision. The exhibit was identified by the garage mechanic who did the work on the brakes. It was not in his handwriting but was written by the parts man. We believe the trial court was correct in its ruling. If the parts man or someone else with personal knowledge of the exhibit had identified it, it undoubtedly would be admissible, but under the record as presented we have concluded the trial court was correct.

IV. A further error of which complaint is made by appellants relates to the refusal of the court to admit testimony of Lynn Wood and of one of the appellants, Henry G. Heusinkveld, relative to conversations between Heusinkveld and appellee's witnesses Ivyl Pierce and George Pierce. These conversations related to a claimed suggested scheme to defraud the insurance company carrying the insurance on the truck. Appellants sought to show by Heusinkveld their version of the testimony of George Pierce relative to certain claimed arrangements whereby the cost of repairing the truck was to be

reported to the insurance company as part of the cost of repairing the Pierce car so that the insurance company would pay both repair bills. Appellee's objection to this testimony was sustained as hearsay except as to the $46 claim for damages to the car. As to the main claim as set out in count 1, the objection was sustained on the theory that George Pierce was present at these conversations but the appellee, Dale Pierce, was not. The record discloses that the appellee had offered testimony relative to these same conversations. Under that state of facts appellants were entitled to show their version of the conversations. Sections 11272 and 11273 of the 1939 Code would make this testimony admissible under the record. See, also, Courtright v. Deeds, 37 Iowa 503, 514, 515; Hess v. Wilcox, 58 Iowa 380, 382, 10 N. W. 847; State v. Blydenburg, 135 Iowa 264, 277, 112 N. W. 634, 14 Ann. Cas. 443. For further authorities on this proposition, see 20 .Am. Jur. 262, section 275; 20 Am. Jur. 463, 464, section 551; Reeves v. Lyon, 224 Iowa 659, 668, 277 N. W. 749; Frost v. Rosecrans, 66 Iowa 405, 407, 23 N. W. 895.

█ V. In the course of the trial Dr. Westfall, one of appellee's witnesses, testified that he examined the appellee for the first time on the day before he testified. He stated that his examination was not for the purpose of treating appellee but was for the purpose of qualifying him to testify. The doctor stated, after proper objections, that appellee told him that he (appellee) was unable to eat his breakfasts. This testimony would have been proper if the doctor had been examining appellee for the purpose of treating him but under the facts as disclosed was inadmissible. The case of Mitchell v. Montgomery Ward & Co., 226 Iowa 956, 285 N. W. 187, holds absolutely contrary to the position taken by the trial court in this case, and consequently it is our conclusion that error was committed in admitting the testimony of which complaint has been made. See, also, 32 C. J. S. 255, 259, 260, section 536, note 27, and cases cited.

█ VI. Although the question may not arise in a retrial of this case, we feel that comment should be made upon a further claimed error of the trial court in connection with the examination of the witness Dr. Westfall. We shall set forth a

portion of the testimony of this witness and the record made in connection with an objection made to a question propounded to him. The record is as follows:

"Q. Assuming now that this boy before he was hurt on July 12th, 1941, could lift heavy objects, any ordinary objects that a man could lift in doing farm work, or heavy pieces of coal that had been mined, lift them up into a mining car, and since that time he can't do that, he doesn't have the strength, would you say that it must be due to the injury which he received? Mr. Steward: That is objected to as calling for his conclusion and opinion, the witness is incompetent, and the question does not embody sufficient facts or all of the facts, it invades the province of the jury. The Court: Overruled, but the question is distinctly leading, I think. You may answer. Defendants except. A. I would say I would consider it due to this injury, yes. Mr. Steward: Move to strike the answer for all the reasons urged in the objection. The Court: Well, overruled. Defendants except."

The record discloses that the only description of the appellee's injury is noted in a prior question which assumed that the injury complained of involved the abdomen and chest of the appellee. We are of the opinion that there should be a more definite showing of the extent of the injuries before the witness could properly answer the hypothetical question presented. Pentony v. Dudley, 197 Iowa 744, 749, 198 N. W. 78.

Upon a full consideration of this case it is our conclusion that the trial proceedings were not carried on in a manner which permitted the appellants to have a fair trial, devoid of prejudicial misconduct. We have commented upon the other errors of which complaint is made. For all the reasons heretofore stated, it is our conclusion that this case should be reversed.—Reversed.

All JUSTICES concur.