C. WALLACE LYNES, minor, and LENORE LYNES, guardian, appellants, v. ALBERTA SCHMOLT, appellee.

No. 47710.

(Reported in 45 N.W.2d 221)

DECEMBER 12, 1950.

Zastrow & Noah, of Charles City, and R. J. Sullivan, of New Hampton, for appellants.

Reed & Beers, of Waterloo, and E. P. Donohue, of New Hampton, for appellee.

OLIVER, J.—This is a companion case to Koob v. Schmolt, 241 Iowa 1294, 45 N.W.2d 216. Plaintiff owned and operated the motorcycle upon which Koob was riding. Plaintiff was injured and his motorcycle was demolished when it collided with defendant's automobile. However, there is some variance in the records of the two cases.

The accident happened on a clear day in May 1949 in the country, on highway 218, a paved highway with a concrete slab eighteen feet wide. The highway runs from Nashua in a southerly direction for about one and one-half miles where it makes a "fairly quick" curve to the right (west). Plaintiff was an experienced motorcycle operator and was familiar with this curve.

He testified he drove his motorcycle toward it from the north at a speed of seventy, seventy-five or eighty miles per hour. When he was three hundred feet or more from the curve he saw defendant's automobile approaching from the opposite di-

rection at a distance of about one eighth of a mile and a speed of thirty or thirty-five miles per hour. Plaintiff started to reduce the speed of the motorcycle but did not "brake down as much as I could because I didn't dare to skid the cycle." He first applied his brakes to the limit when he was about seventy-five feet north of the curve. At about that point he saw he was traveling too fast to "make the curve" on the inside, so he "sliced" across from the west (right) lane of the pavement to the east dirt shoulder and traveled upon it around the outside ("big side") of the curve about two hundred and forty feet to the point of collision. He testified: "I didn't think I had better try to keep on the right side of the road. I thought it would force me to her [defendant's] side of the road and I better get over there first" to avoid a collision. "My speed had placed me where I found I had to go to the other side of the road * * *." The motorcycle was traveling at about sixty miles per hour when it arrived at the curve. Plaintiff did not have the motorcycle under such control he could "make the turn" but was able to guide it along the shoulder four or five feet east of the pavement "braking down as I went."

Meanwhile defendant's automobile, traveling in the east lane of the pavement, "began to slow down" and to "creep out" to the right (east) edge of the pavement. It continued to travel on the pavement until the two vehicles were approximately twenty-five feet apart, when defendant "suddenly pulled over onto the shoulder and run into my path, and of course we collided." The motorcycle was then four or five feet east of the pavement on the shoulder. Defendant cut sharply across and did not travel far on the shoulder before the collision. The car was then traveling five or ten miles per hour, and plaintiff had reduced the speed of the motorcycle to from thirty-two to thirty-five miles per hour.

At the conclusion of the evidence for plaintiff the court sustained defendant's motion for a directed verdict in her favor on the ground the evidence showed plaintiff was guilty of contributory negligence as a matter of law. We hold this order was correct.

Section 321.285, Code of Iowa, 1950, provides:

"Speed restrictions. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing * * *."

Section 321.288 provides:

"The person operating a * * * motorcycle shall have the same under control and shall reduce the speed to a reasonable and proper rate: * * *

"3. When approaching and traversing a * * * sharp turn, or a curve * * * in a public highway."

■ This court has frequently stated a motor vehicle is under control, within the meaning of the statute, if it is moving at such a rate and the operator has the mechanism and power under such control that he can bring it to a stop with a reasonable degree of celerity. Carlson v. Meusberger, 200 Iowa 65, 204 N.W. 432; Carruthers v. Campbell, 195 Iowa 390, 192 N.W. 138, 28 A. L. R. 949; Dorman v. Service Sales Co., 241 Iowa 1182, 44 N.W.2d 716. And it has been pointed out that "likewise the ability to divert or change its course, may be properly involved in the question of control." Johnson v. Kinnan, 195 Iowa 720, 723, 192 N.W. 863, 865.

Plaintiff testified that from about three hundred feet north of the curve he applied his brakes "as much as I could" without causing the motorcycle to skid and that from seventy-five feet north of the curve to the place of collision the brakes were applied to the limit. Although the concrete pavement and the dirt shoulder were dry plaintiff could not bring the motorcycle to a stop within about five hundred and forty feet and it was traveling at a rate of thirty-two to thirty-five miles per hour at the time of the collision. Nor was the course of the motorcycle under plaintiff's control while it was upon the pavement. He testified he saw he could not make the curve on the inside and that his speed placed him in a position where he could not control his course. If he did not turn across the pavement, he thought the motorcycle would be forced "to her [defendant's] side of the road."

Viewed in the light most favorable to plaintiff the evidence shows beyond serious question his unexcused violation of provisions of both quoted statutes and that such conduct directly contributed to the collision. Hence, a directed verdict for defendant was required.—Affirmed.

All JUSTICES concur.