GUY DEVORE, appellee, v. DONALD SCHAFFER, appellant.

No. 48494.

(Reported in 65 N.W.2d 553)

1018

July 26, 1954.

J. D. Reynolds, of Creston, and Lee R. Watts, of Corning, for appellant.

Thos. E. Mullin, of Creston, and Byron B. Stanley, of Corning, for appellee.

SMITH, J.—Plaintiff, an Adams County farmer, desiring to buy some used tubing belonging to the county, went to the county engineer, and then to the county yard in Corning where the county kept bridge steel, lumber and other highway material: "I came to see the engineer to buy some of the old tubes along the road. They had been doing some grading and graveling near

my farm and had taken out some tubing. I was interested in buying * * *."

After a brief call on the engineer at the shop he went down "to see the boys who were running the truck" in the yard. He was interested also in some bridge iron which the engineer told him was in the lower yard. He there found defendant and three other county employees at or near a county truck and trailer of which defendant was the driver. The truck was 24 feet and the trailer 18 feet long. There was some conversation and they all walked over to look at the old bridge iron.

They returned to the truck which was near a large Diesel oil barrel (described as a 15,000-gallon tank). The truck was in a sort of driveway or roadway headed northeast, an estimated distance of 60 feet southwest of the tank. A small pump house was immediately to the east of and close to the tank. The driveway turns to the north from a northeasterly course at and around this pump house.

There was some conversation as the county men got aboard the truck and trailer, defendant in the driver's seat, one man alongside him in the truck and the other two behind on the flat top of the trailer.

Plaintiff's description of what happened is not too clear: "* * * and they started off and I started up and the trailer just reached and got me. * * * I walked just kind of right up, just outside the truck." He says the truck started northeast and then turned straight north: "Well, it just caught my leg and foot in the dual wheel and wrapped me around the wheel, and knocked me down, and run over this leg and broke it and tore this one up. I was first caught by the trailer in the right heel. I was thrown just straight flat down. I lit on my head and nose, and cut my lip."

It is shown in the evidence that when the truck turned to the left to go north around the building the trailer cut nearer the building four or five feet. "When we came around there with the trailer on, we swing over enough to the east [right] * * * and south, not to catch the trailer onto the building. * * * I knew * * * that the trailer would cut over north from the truck when I started to make the turn."

Plaintiff explains that when the truck turned left the trailer "didn't follow" it: "Q. It didn't go over to the right or follow behind the truck? A. No sir."

It appears the conversation continued a short distance as plaintiff walked alongside the truck after it started and before it started to turn. Defendant testified: "I traveled about thirty feet while Devore was still talking to me. He was along the side there, talking to me, and talked to one of the other boys on the truck that I know of."

The court submitted but two specifications of negligence: (1) In suddenly starting the truck and turning it sharply to the left, and (2) in failing to keep a proper lookout.

The jury brought in a verdict for plaintiff and defendant appeals from the resulting judgment.

I. Defendant first complains of rulings permitting an Omaha doctor to testify as to statements made to him by plaintiff concerning plaintiff's injuries. The objection was that "the doctor did not treat plaintiff as a patient but merely examined him for the purpose of being able to testify as an expert witness."

It is urged the doctor repeated statements made to him by plaintiff concerning how the accident happened. There is some ground in the record to support that complaint. "I asked him about this accident and he described it, stating how he had been hurt, and how he had his foot fractured. He had numerous body bruises and contusions and some head injuries * * * in the face, nose and lip. He said he was unconscious for several hours." There is more clinical history upon which the witness based his testimony as to the extent of plaintiff's injuries.

The trial judge at the conclusion of the doctor's testimony advised the jury he had stricken "all statements made by the plaintiff [to the doctor] regarding the history of his case and his condition" and added: "You should not consider any statements made by the plaintiff to the doctor, *or any opinion of the doctor except that which was the result of and based upon his physical examination of the plaintiff.*" (Emphasis supplied.)

And in instruction 12, two days later, the jury was told in effect that while a physician called on to treat and who does treat a patient may testify to what the patient told him as a

part of the facts upon which he bases his opinion as to the patient's condition, the rule is otherwise when he is called to make an examination for the sole purpose of determining his condition "and not for the purpose of treating him. * * * And you will, in considering this case, give no consideration to any statements made by the plaintiff to the examining physician who did not treat him for his injuries." But no caution was given at this point to disregard the expert's opinion based on statements made to him by the patient.

The distinction urged by defendant and adopted by the instruction, between a medical expert witness who is called to treat and actually treats the patient and one called merely to testify seems well established. In Mitchell v. Montgomery Ward & Co., 226 Iowa 956, 959, 285 N.W. 187, 188, it is clearly explained that the rule permitting a doctor to testify as to the history of the case is an exception to the hearsay rule based on "a probability that the patient will not falsify in statements made to his physician at a time when he is expecting and hoping to receive from him medical aid and benefit. But no such presumption can be indulged, and such testimony is not admissible, according to the great weight of authority, when the patient, having become a litigant, causes himself to be examined by a physician for the purpose of the latter giving evidence in a case about to be tried." This case was followed in Pierce v. Heusinkveld, 234 Iowa 1348, 1358, 14 N.W.2d 275.

In 32 C. J. S., Evidence, section 536, at pages 259, 260, it is said that, although there is some authority to the contrary, a medical expert who has examined the patient for the purpose of becoming a witness "must base his testimony solely on the examination * * * and not on statements in the nature of self-serving declarations made by the patient * * * and acts * * *, which may have been either voluntary or involuntary, cannot form part of the basis of the opinion." See 20 Am. Jur., Evidence, section 866, citing annotation 65 A. L. R. 1217, et seq., IIIb.

The witness here frankly admitted the examination he made of plaintiff was for the purpose of qualifying as an expert witness and not of treating him as a patient. He saw plaintiff but

once and that was in Omaha. He was asked no hypothetical question based on his own examination alone.

II. Plaintiff tacitly concedes the soundness of this proposition contended for by defendant as did also the trial court. It is urged however that any error in the admission of the doctor's testimony was cured by the admonition to the jury, already quoted, and instruction 12, already referred to.

We have examined the doctor's testimony to find whether he expressed any opinion based alone on his own physical examination of plaintiff and disregarding the history of the case recounted by plaintiff. He expressed none. The admonition (not repeated in the instructions) placed upon the jury the duty of making a distinction which the witness himself did not make and was not asked to make.

The error in admission of the testimony must have been prejudicial and it could not have been cured by merely striking the testimony of the statements and by admonishing the jury to ignore it and any opinions based on it.

Had the court stricken all opinion testimony of the witness we would then have to appraise the situation to determine whether the prejudice was thereby removed. But this the court did not do. Every opinion the doctor expressed was based in part at least on incompetent evidence and was therefore entitled to no consideration. Switzer v. Baker, 178 Iowa 1063, 1079, 160 N.W. 372.

The witness was asked as to his opinion of plaintiff's "chances of recovery" based upon *"the history of the case* [emphasis supplied] and the diagnosis you made there and the X-ray pictures and so on that you took." He replied: "This gentleman is in a stationary condition and he will never get any better. It is a long time since the accident and there was apparently a slow healing fracture in that the doctor kept the cast on a long time. He has loss of the big connecting muscle on the front of the right thigh, with weakness, and ample evidence to corroborate what he says about his knee wobbling, and as I told him, it probably always will. There is no further treatment. Maybe one of these braces would help his left ankle but there is no treatment for it."

Neither the form of any question asked the witness, nor the language of any answer, gives any clue by which the jury could determine what part of the doctor's opinion was (in the language of the court's admonition) "the result of and based upon his physical examination of the plaintiff."

Nor could the court make such determination. Only the witness could know what his opinion would have been without reference to what plaintiff told him. We think there was prejudicial error and that it concerned more than the mere question of the amount of damages. The doctor went out of his way at one point to comment on plaintiff's honesty in not making claims that "could easily be claimed by a conniving patient." The doctor's testimony was calculated throughout to create sympathy for plaintiff generally, entirely distinct from the question of amount of damages.

III. Defendant argues plaintiff was "a trespasser or, at the most, a mere licensee, on a personal errand of his own or for his own accommodation." He invokes the rule that the only obligation owed by the owner or occupant of premises to a mere licensee or a trespasser "is not to intentionally, wilfully or wantonly injure him", citing Printy v. Reimbold, 200 Iowa 541, 202 N.W. 122, 205 N.W. 211, 41 A. L. R. 1423, and 38 Am. Jur. 773.

Plaintiff, on the other hand, insists he was an invitee and entitled to the protection of the general law of negligence which "imposes the duty of exercising due care to prevent injury", citing Mann v. Des Moines Ry. Co., 232 Iowa 1049, 7 N.W.2d 45, and other cases.

There was ample testimony to indicate the county yard was not used alone for storing county material. Plaintiff testified he had bought iron there from the county engineer before, and on another occasion had obtained plank. The engineer testified in effect that on the day plaintiff was injured he told plaintiff "If you will wait a few minutes I will go down with you and show you what we have." The yard clerk and engineer both gave testimony as to the custom of selling used material not needed by the county.

This is not an action against the county as the owner or occupant of the premises, nor does it involve any claim the

injury was due to a defective condition of the premises. We think the trial court correctly submitted the case to the jury upon the common-law rule that requires the driver of a vehicle to exercise that degree of care for the safety of another which an ordinarily careful and prudent person would exercise under like circumstances. Defendant owed no greater or less degree of care to plaintiff by reason of the place where the injury occurred. Plaintiff was neither a trespasser nor a *mere* licensee. He was there on a legitimate errand. Whether as a licensee or an invitee was immaterial. In other words the question of plaintiff's relationship to Adams County as the proprietor of the premises does not fix the measure of duty of defendant to plaintiff. Connell v. Keokuk Electric Railway & Power Co., 131 Iowa 622, 629, 109 N.W. 177.

Defendant argues "the place where this accident happened has a direct bearing upon the question of 'lookout.'" No case is cited in support of the proposition. Plaintiff answers: "Lookout is not a statutory ground of negligence. It is not made so." Lookout appears to be a word borrowed from maritime law where it was applied to a member of the crew charged with the duty of keeping watch for possible danger. See 15 C. J. S., Collision, section 2, page 12; also 25 Words and Phrases, Lookout, page 601 et seq.

As used in connection with the operation of a motor vehicle it has no technical legal significance. Its meaning depends on the context. Here, as applied to defendant, it could only mean care to discover whether plaintiff was in a place of safety from possible injury by the contemplated movement of the truck and trailer. We find no error in the instruction given or in the refusal to give the requested instruction on the measure of care.

Defendant's suggestion that "the cloak of governmental immunity should be placed on the defendant", as an employee of the county, notwithstanding Rhoads v. Perdue (239 Iowa 1030, 33 N.W.2d 371) cannot be accepted.

IV. Nor do we think there was lack of sufficient evidence to go to the jury on the issues of defendant's negligence and plaintiff's freedom from contributory negligence. In Division III we have answered the contention that because of the

location of the accident and of defendant's employment with the state some different standard of care should be applied.

As to general negligence and contributory negligence, defendant was driving a vehicle with which he was familiar. He had driven that type "about a year and a half." He knew that in making the turn to the left he had first to swing the truck to the right enough so that the trailer would clear the building around which the left turn was being made. He must have known plaintiff would be in a place of danger when the vehicle made the turn.

It is not so clear plaintiff realized his dangerous situation as to make the question of freedom from contributory negligence one of law. He was moving away from the truck with his back to the trailer. He testified he did not know the trailer would "cut across" as the truck turned left—"I didn't know it would follow in that way."

We think there was a jury question on both issues.

V. Other assigned errors are not discussed as the case must be reversed because of the error pointed out in Divisions I and II hereof. They may not arise on a retrial of the case or may depend on a record substantially different from the one presented here.

For the error pointed out the case must be reversed.—Reversed.

BLISS, WENNERSTRUM, HAYS, THOMPSON, and LARSON, JJ., concur.

MULRONEY, J., GARFIELD, C. J., and OLIVER, J., dissent.

MULRONEY, J. (dissenting)—I agree with all but Divisions I and II of the majority opinion but dissent from those divisions and the reversal.

The specific error which the majority finds in Divisions I and II is in that part of the admonition that told the jury to disregard the doctor's opinion testimony unless based on the doctor's physical examination. The majority holds neither the court nor the jury could determine what the doctor's opinion would be "without reference to what plaintiff told him." I do not understand the majority to hold the admonition and instruc-

tion were insufficient or confusing, in so far as they withdraw any evidence of *statements* that plaintiff made to the doctor, which the doctor related on the witness stand. It was merely the doctor's opinion testimony which the majority states could not be separated as to the doctor's opinion based on his examination apart from the history which plaintiff gave the doctor.

Obviously the majority would be wrong if no prejudice resulted from the trial court's admission of the evidence of the opinion of the examining physician. So too would the majority be wrong if, under the record here, there was no error in the admission of such opinion testimony. There would be no occasion to examine the sufficiency of the admonition of the court with respect to the withdrawal of the opinion testimony to see if it cured an error in admitting such testimony, if in fact no prejudicial error was committed in admitting the testimony.

I. The record shows the doctor did not repeat any statements which plaintiff might have made to him concerning how the accident happened. He did relate what plaintiff told him as to the body bruises, contusions, head injuries and fractures that plaintiff suffered in the accident, as well as other, what the majority opinion calls "clinical history", which must have been told him by plaintiff. This was not offered as substantive proof of the facts. State v. Blydenburg, 135 Iowa 264, 112 N.W. 634, 14 Ann. Cas. 443; DeLong v. State Highway Commission, 229 Iowa 700, 295 N.W. 91. I think the evidence would be admissible for the limited purpose of showing the reasons on which the doctor's opinion was based. But, for the purpose of argument, we will assume the court's ruling striking this evidence was correct. And we will assume the doctor's opinion evidence was in part based on this stricken clinical history.

No possible prejudice resulted from the admission of the doctor's opinion testimony, based in part on this "clinical history" because there was abundant other evidence, almost entirely undisputed, to establish everything the doctor testified plaintiff told him. It need not be related here. It is sufficient to say it was all firmly established in all essential details by the testimony of plaintiff and his own doctor who had treated him as well as by other witnesses.

How could prejudice result from the partial use of this "clinical history" as a basis for the doctor's opinion as to plaintiff's chances of recovery? Clearly if the doctor had been asked to state his opinion in answer to a hypothetical question that hypothesized all of this "clinical history" which was established by competent evidence, it would have been proper. What difference does it make whether the doctor bases his opinion in part on a clinical history, related to him by plaintiff or established by other testimony, if the history is the same? The general rule that such a medical expert may not base an opinion on the history as received from a patient can be admitted. And in this connection it is well to note the word "history" in the rule "covers the statements of a patient to the doctor about matters in the past, not present complaints." Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 326, 141 S.W.2d 780, 782. The reason for the rule is that the doctor should not be allowed to base his opinion on facts not established by competent evidence—and the history when supplied by the patient to the doctor is hearsay and incompetent. The reason for the application of the rule vanishes or at least no prejudice results when the history related to the doctor by the patient is established by other competent evidence.

In the last cited case the opinion states the general rule that the "history is within the hearsay rule and therefore is not a proper foundation for an opinion which must be based on competent evidence." But the opinion goes on to state: "If, however, the so-called 'history' is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such 'history' must fall."

In Little v. Maxwell, 183 Iowa 164, 169, 166 N.W. 760, 762, the physical examination made by the doctors for the purpose of testifying was supplemented by information obtained from questions they asked plaintiff and her father touching her injuries. We held since "each of the several witnesses described plaintiff's condition, and some of the conclusions expressed by them were not unfavorable to the defendant, and, on the whole, * * * no prejudice resulted."

The instant case is a much stronger case for lack of prejudice than the Little case. Here, as in the Little case, the

doctor at one place in his testimony described in detail what he found when he made the physical examination, and parts of his testimony might be considered favorable to the defendants, but here there is the added fact that it cannot be said his opinion was based on facts that were not in evidence.

I would hold no prejudice resulted in the court's admission of the evidence of the doctor's opinion and consequently no reversible error would result if the admonition failed to cure any possible error.

II. The second proposition is whether, under the record here, it was error at all for the trial court to admit the doctor's opinion testimony. As previously stated it would be wrong to reverse because of a confusing admonition or insufficient instruction, withdrawing the opinion evidence, when the admission of the evidence, under the record presented, was not erroneous.

The majority opinion cites two cases in Division I as support for the conclusion that it was error to allow the evidence of the statements plaintiff made to the doctor. They are Mitchell v. Montgomery Ward & Co., 226 Iowa 956, 285 N.W. 187, and Pierce v. Heusinkveld, 234 Iowa 1348, 15 N.W.2d 275. We recently had occasion to state the rule laid down by these two cases. In State v. Beckwith (Hays, J.) 243 Iowa 841, 849, 53 N.W.2d 867, 871, we stated:

"In these cases [the two cited above] the objection was not to the opinion given but to specific statements made by the doctor as the basis for the opinion. They were being offered as substantive proof of the facts stated and held inadmissible as hearsay and self-serving. See also DeLong v. Iowa State Highway Comm., 229 Iowa 700, 295 N.W. 91."

As applied to this case the cited authorites would support the rule that the statements made to the doctor cannot be related by the doctor as substantive proof of facts contained therein. The only other case cited on this point is in Division II of the majority opinion, Switzer v. Baker, 178 Iowa 1063, 1079, 160 N.W. 372, 377. This is an opinion by Justice Weaver, concurred in by three other justices, where a doctor, who had never treated the plaintiff, testified as an expert. He had never made any physical examination of the plaintiff and his opinion was based

entirely on information he gained from the plaintiff and other persons. The opinion holds it was error to allow the doctor's opinion, but the opinion states: "It should be added that some members of the court are of the opinion that a medical expert may properly testify to his diagnosis based upon the history of the case as made to him by the patient, but may not found his opinion upon statements to him by third persons."

It is probably unnecessary to argue that the doctor here did not relate any objectionable statements made to him. If he did, the evidence was withdrawn by the court in the admonition and instruction. The court went further than he should for he struck "all statements made by the plaintiff to Doctor Schwertley regarding the history of his case *and his condition.*" (Italics supplied.)

The jury would have no trouble following that portion of the admonition. The majority holds the confusion arose in the last part of the admonition where the court told the jury "not to consider any opinions of the doctor except that which was the result of and based upon his physical examination of the plaintiff." The majority quotes the one opinion of the doctor which, by the question asked, could be based partly on the history. There was no objection to this question. I do not think under the record here it can be said there was a so-called standing objection. But assume there was a proper standing objection, the recent case of State v. Beckwith, supra, is direct authority for the proposition that the opinion was proper. In that case (at page 848 of 243 Iowa) the doctor who had examined Beckwith in order to qualify as a witness was asked for his opinion as to whether there was any evidence of mental disease or mental unsoundness on June 22, 1949. It was objected to on the grounds that his opinion was based "partially on personal examination and partially upon hearsay * * * upon a personal history of the defendant taken by the doctor himself * * *." The doctor's answer was: " 'When I examined him on July 7th [1949] there was no evidence of mental disease, and from the history given by the patient * * * and other evidence I assumed there was none on June 22. That's all I can say is that there was none on July 7th, and there was no indication that there

was any on June 22, but——. There was no evidence of mental disease.' "

We held in the above case the opinion testimony "was proper" and found no error in its reception. And we held the Switzer case was support for our holding—the lone authority which the majority now cites as authority for the opposite conclusion. I would hold no error was committed by the trial court in the reception of the doctor's opinion testimony and therefore defendant secured more than he was entitled to when the court gave the admonition and the instruction. I feel the majority has fastened upon a minor, trivial incident in the trial on which to reverse. This is borne out by the fact the point is not argued at all. Counsel's brief point is that it was error to allow the doctor to "repeat the statements made to him by plaintiff concerning how his injuries were received when the doctor did not treat plaintiff as a patient, but merely examined him for the purpose of being able to testify as an expert witness." The entire argument under this brief point is that the court committed error in allowing the doctor to relate *statements* plaintiff made to him, and, the prejudice in such admission was so great that it could not be taken out of the minds of the jurors by a subsequent withdrawal. I do not think the doctor did repeat *statements* that plaintiff made on *how* the accident happened but in any event the reversal is not on the basis the admonition was insufficient in withdrawing *statements*. Nowhere does defendant argue the withdrawal of the opinion testimony was insufficient or confusing. It could well be argued the jury heeded the admonition and gave no consideration to the doctor's opinion since they were told not to consider any opinion "except that * * * based upon * * * physical examination." The last sentence of the four-page argument under the brief point merely states: "The oral instruction that the court gave was very short and in no way could the jury understand just what was stricken from the record." This is the only statement in the entire brief which even remotely suggests appellant's counsel ever thought about the point which the majority now finds was reversible error. The plaintiff received no inkling from this that defendant was contending the admonition was insufficient or confusing in the portion withdrawing the opinion testimony. Plaintiff an-

swered the argument made and contended the error was not so great that a subsequent withdrawal of testimony would not remove prejudice. Defendant filed a reply and repeated his argument that the withdrawal and admonition would not remove prejudice but said nothing .at all to the effect that it was insufficient or confusing or that the jury would not be able to follow it—the point which the majority now finds was reversible error. I would affirm.

GARFIELD, C. J., and OLIVER, J., join in this dissent.