Raymond K. BRADT, Appellee,

v.

GRELL CONSTRUCTION, INC., and Donald
E. Grell, Appellants.

No. 53006.

Supreme Court of Iowa.

Sept. 17, 1968.

 

Hansen, Wheatcraft & McClintock, Des Moines, for appellants.

Johnson, Burnquist & McCormick, Fort Dodge, for appellee.

MASON, Justice.

This is a negligence action in two divisions by Raymond K. Bradt to recover for personal injuries sustained when a truck owned by defendant Grell Construction, Inc. and driven by defendant Donald E. Grell struck a tree on plaintiff's premises which fell on him. In seeking recovery plaintiff pleads specific acts of negligence in one division and relies on the theory of res ipsa loquitur in the other.

For convenience where appropriate the corporation will be referred to as defendant and its president, Donald E. Grell, as Grell.

In motions for directed verdict made at close of plaintiff's evidence and renewed at the close of all evidence, defendants asserted plaintiff had failed to establish by any competent proof defendants were negligent in any of the particulars alleged; facts and circumstances under consideration did not warrant application of res ipsa loquitur; and plaintiff was guilty of negligence in the respects alleged as an affirmative defense which was a proximate cause of his injuries and resulting damages.

The trial court withdrew all pleaded specifications of negligence except failure to maintain a proper lookout and have the motor vehicle under control and overruled defendants' motion in other respects.

Plaintiff also moved for directed verdict and in the alternative moved to strike and dismiss from defendants' answer those paragraphs of each division in which defendants alleged as an affirmative defense plaintiff was guilty of certain specific acts of negligence which was a proximate cause of the accident and injuries of which he complains. The trial court sustained plaintiff's motion to withdraw affirmative defenses and submitted the matter on the two

specifications of negligence and under the doctrine of res ipsa loquitur.

Trial to a Webster County jury resulted in a favorable verdict for plaintiff. The jury was not asked to answer by special interrogatory whether its verdict was based on a finding of negligence or negligence under the doctrine of res ipsa loquitur. After overruling defendants' motions for judgment notwithstanding the verdict and in the alternative for new trial, judgment was entered against defendants on the verdict.

I. Defendants appeal, assigning seven errors relied upon for reversal. Summarized in the order considered rather than as argued, defendants contend the trial court erred in (1) submitting to the jury plaintiff's pleaded specifications of negligence of failure to keep a proper lookout and lack of proper control and, under the doctrine of res ipsa loquitur, (2) failing to sustain their motion for directed verdict, (3) withdrawing affirmative defenses which raised the question whether plaintiff was guilty of negligence which was a proximate cause of his injuries and (4) giving instruction 15 to which defendants had made timely objections.

To put the matter differently, defendants' appeal presents the questions whether there was a jury issue on defendants' negligence; whether the doctrine of res ipsa loquitur was applicable here; and whether there was evidence of plaintiff's negligence that would constitute a defense to the action.

■ It is the duty of the trial court to submit to the jury all issues presented by the pleadings upon which there is evidence tending to support them. Of course, it is reversible error to submit an issue having no support in the record. McClenahan v. Des Moines Transit Co., 257 Iowa 293, 296, 132 N.W.2d 471, 473; Campbell v. Martin, 257 Iowa 1247, 1251, 136 N.W.2d 508, 511; and Walker v. Sedrel, 260 Iowa 625, 149 N.W.2d 874, 878.

■ In considering whether there is evidentiary support for an instruction on pleaded specifications of negligence we give the evidence the most favorable construction it will reasonably bear. Campbell v. Martin, supra; Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1182, 136 N.W.2d 338, 341, and citations in these opinions.

■ Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them a jury question is engendered. Citation of authority is unnecessary. Rule 344(f)17, Rules of Civil Procedure.

II. Several years prior to the accident from which this action arose, plaintiff, a Fort Dodge veterinarian, had purchased an acreage and homesite located in a wooded area north of Fort Dodge. Before the accident he had hired defendant to do grading work for him, bought dirt and had Grell haul it to pieces of the acreage. Plaintiff had also frequently purchased used lumber from defendant.

On December 29, 1964, Grell, pursuant to prior arrangements with plaintiff, was in the process of delivering a trailer load of planks to the building site. To get there it was necessary to enter the premises through a gate at the southeast corner of the property and then proceed northwesterly to a shed where defendant had made previous deliveries of materials. There was a lane leading from the gate to the storage shed. It was not graveled, just hard packed earth, and it was neither graded up nor cut down. As you come through the gate from the road adjoining the property to the east, the terrain drops off slightly to the west. There are numerous trees in the area. From the gate, the lane runs west 10 to 15 feet, then curves around or between these trees a little northwesterly, but mostly north.

West of the gate 30 to 35 feet was a bent tree. North of this bent tree was a rotten tree, the one which, when struck by defendant's truck, fell on plaintiff.

The day of the accident, the weather was clear but rather cold. The surface of the ground and lane was covered with "a layer of crusty snow; snow that may have been melted somewhat by the sun and then frozen again". It was two or three inches deep and as you walked it would crunch. Plaintiff had done nothing about grading, shoveling or removing the snow to open the driveway.

Dr. Bradt rode to the premises with Grell's cousin, Charles Grell, an employee of the corporation, arriving ahead of the truck driven by Donald Grell. When plaintiff and Charles Grell arrived they proceeded to chase Dr. Bradt's horses away from the gate to the northwest part of the premises so the animals would not get on the road when the gate was opened.

About this time Grell arrived with his load. He was driving an 18-foot 1955 Chevrolet Cab-over tractor, and 34-foot Edsel lowboy, which with its load of lumber was about 54 feet long, weighing between 27 and 30 tons.

On his arrival, Grell opened the gate and "sized it for getting in". The clearance was roughly ten feet and the truck eight feet wide. Because of the length of the load Grell said he "had to juggle her" to get through the gate. The truck was equipped with California mirrors six inches wide and a foot long on both sides.

When plaintiff and Charles Grell returned from chasing the horses, plaintiff went to a point some 45 feet west of the gate to see what was going on. By that time apparently Grell had the truck ready to approach. Charles Grell watched defendant's truck coming through the gate to make sure it would clear the south post. Grell had stationed two of his men inside the gate to watch as he drove the truck through.

After maneuvering into position, Grell started through the gate "in first gear, which is the lowest gear, actually riding the brakes and slipping the clutch and just

barely moving" as there wasn't going to be a lot of room to spare. Defendant, using the mirrors going through the gate, could see the fence on the left but not on the right. Passing through the opening, an outrigger on the right side of the trailer, about three quarters of the way from the tractor front, rubbed the north gatepost. At that moment one of Grell's men yelled, "Whoa". Grell applied his brakes. In stopping, the vehicle slid sideways approximately two to three feet, broke the post and the front bumper bracket of the truck struck the rotted tree previously referred to, causing it to fall northwesterly on plaintiff. The right bumper brackets were torn off on impact but the truck was not otherwise damaged.

Plaintiff sustained substantial injuries and brought this suit to recover. Defendants on appeal neither question the extent of plaintiff's injuries nor claim the award of $22,500 is excessive. Errors assigned relate to issues of liability.

■ III. Defendants had the duty to exercise ordinary care in maintaining a "proper lookout" for plaintiff whose presence was known by the truck driver at the time and for all objects which might conflict with his operating the motor vehicle in the area. A breach of that duty would constitute negligence.

■■ Keeping a proper lookout is not a statutory duty in Iowa but motorists have a common-law duty to exercise ordinary care under the circumstances in maintaining a lookout. Mathews v. Beyer, 254 Iowa 52, 57, 116 N.W.2d 477, 480; McClenahan v. Des Moines Transit Co., supra, 257 Iowa at 297, 132 N.W.2d at 474. Proper lookout means more than merely to look and see an object. It implies being watchful of the movements of the driver's vehicle in relation to other things seen and which could be discerned or seen in the exercise of ordinary care. It involves care, watchfulness and attention of the ordinarily prudent person under the circumstances.

Mathews v. Beyer, supra, 254 Iowa at 57, 116 N.W.2d at 480; McClenahan v. Des Moines Transit Co., supra, 257 Iowa at 297, 132 N.W.2d at 474; Schneider v. Swaney Motor Car Co., supra, 257 Iowa at 1183, 136 N.W.2d at 342; and Campbell v. Martin, supra, 257 Iowa at 1251–1252, 136 N.W.2d at 511, and citations in these cases.

■ The word lookout as used in connection with operation of a motor vehicle has no technical legal significance. Its meaning depends on the context. Here, as applied to defendants, it could only mean care to discover whether plaintiff was in a place of safety from possible injury by the contemplated movement of the tractor and trailer. Devore v. Schaffer, 245 Iowa 1017, 1024, 65 N.W.2d 553, 557, 51 A.L.R.2d 1041; Shinofield v. Curtis, 245 Iowa 1352, 1358, 66 N.W.2d 465, 469, 50 A.L.R.2d 964.

■ The exercise of reasonable care under the circumstances required defendants to refrain from conduct reasonably likely to cause injury to others. Kaffenberger v. Holle, 237 Iowa 542, 547, 22 N.W. 2d 804, 808.

IV. Defendant had been doing business with plaintiff "for a couple of years" before the accident during which time Grell had delivered material to these premises on several occasions. He had taken this equipment through the same gate over the lane which he described as a "plain, level, two-car driveway" with trees on both sides. Plaintiff had not been present when Grell made these deliveries.

It was about 4 p. m. December 29 when Grell arrived at plaintiff's premises, stopped and got out to size up the gate "because it was going to be quite a maneuver". He knew the gate was narrow. He had intended to take the load to the north end of the property, but in order to get the tractor-trailer in, couldn't go up the original lane because there wasn't room to juggle, bend the trailer that fast in the short distance available.

Plaintiff had taken Grell's deposition and read a portion of it into the record at the trial, Grell also testified as defendants' witness. Giving plaintiff the most favorable construction the evidence will reasonably bear, it appears when Grell stopped to make his observation of the gate and driveway, the men and plaintiff were there. Although the driveway had a little snow on it, the surface was level. In making this observation Grell said he did not take the tree into consideration as it was to the right of the lane, didn't pay any attention to the tree as he started in nor did he see the tree go over. He was using the mirrors, watching the left side of the truck but couldn't see to the right. Grell further testified that from the time he started the maneuver into the lane until he hit the tree plaintiff was inside the gate but taking no part in manipulating the equipment. He recalled seeing plaintiff at a glance but wasn't sure and paid little attention to where he was standing. When a man hollered, Grell was facing left watching the left mirror. When he felt the jolt of the tree he glanced forward and "there laid Doc in the snow 15 to 20 feet from the stump of the rotten tree".

Grell's men, stationed inside the gate, were looking easterly toward the gate posts through which the tractor-trailer was passing. Grell was concentrating his attention in the rear view mirror looking easterly at the stationary south gate post. When his man hollored "Whoa", Grell pressed down on the brake pedal without looking ahead. At the time of the maneuvering of the vehicle material to the collision with the tree no one, including Grell, was looking in the direction the truck was moving.

■ We do not agree with defendants' argument there was no evidence to support plaintiff's allegation that defendants failed to keep a proper lookout. Grell described his own conduct from the time he arrived at the gate until the truck hit the tree. We conclude reasonable minds might draw different inferences whether

defendants had fulfilled their duty to exercise ordinary care in maintaining a proper lookout in the direction where lookout would be important and meaningful.

Our function in review is to examine the evidence to determine, not whether it proves defendant guilty of negligence in failing to exercise ordinary care in maintaining a proper lookout for plaintiff, but whether it makes a sufficient showing so that the trial court would be warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of the facts be justified in finding defendant negligent. Anderson v. Elliott, 244 Iowa 670, 673, 57 N.W.2d 792, 793; Brandt v. Richter, Iowa, 159 N.W.2d 471, 474, and citations.

It was proper for the trial court to submit the issue of lookout to the jury.

V. Defendants contend under another assignment the court erred in submitting plaintiff's allegation that defendants failed to have the vehicle under control in violation of the common law since there was no issue of control to submit. They maintain when the court instructs upon a certain question there must be some evidence upon which to base such instruction and it is error to do so when there is no evidence to support it. We have so stated in Division I, supra.

Defendants further contend under our decisions the test whether a motorist has his vehicle under control has consistently been held to be, "Does the motorist have his vehicle under such control that it can be brought to a stop with a reasonable degree of celerity?" It is not required that the driver have ability to stop instantly. Citing Ryan v. Trenkle, 199 Iowa 636, 200 N.W. 318; Miller v. Griffith, 246 Iowa 476, 66 N.W.2d 505; and Lewis v. Super Valu Stores, Inc., (S.D.Iowa C.D.), 249 F.Supp. 852, 854 (1965).

They argue Grell, driving in first gear which has a maximum speed of 5 m. p. h. was, as stated, riding the brakes, slipping the clutch and barely moving and it cannot be said under the rules of the cited cases Grell did not have the vehicle under control.

The question is whether Grell, in operating this loaded equipment on a slight decline covered with snow in what has been described as a tight maneuver, had the ability to divert or change his course as the circumstances required. See Guinn v. Millard Truck Lines, Inc., 257 Iowa 671, 678, 134 N.W.2d 549, 554. At this point we are concerned only with the sufficiency of the evidence to raise a jury question on the issue of lack of control.

In addition to other circumstances heretofore described, Grell was operating a unit similar to equipment he had driven 10 or 12 years at least 10,000 miles, had supervised loading the trailer with 27 to 30 tons of 28-foot 2 x 12's and was driving over a slight decline in the marked driveway from the gravel road on the east side of plaintiff's property to the gate intending to follow a route beyond the gate other than the established lane. He described movement of the truck as jackknifing, "the back end of the trailer slid sideways". "When I stepped on the brake pedal, the weight of the load, with the position I was in in the turn, caused me to slide to the north and forward. That was when I struck the tree."

In Schneider v. Swaney Motor Car Co., supra, 257 Iowa at 1184, 136 N.W. 2d at 342, we said:

"A motor vehicle is 'under control' if it is moving at such a rate of speed and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. * * * [Citing authority]. Of course the existing conditions must be considered. * * * [Citing authority]. 'Manifestly, the ability to turn the automobile and to expeditiously change its course to avoid collision or injury may have something to do with the "control" of an auto-

mobile. The present ability to increase or decrease the speed at which a car is moving and likewise the ability to divert or change its course may be properly involved in the question of control.' See also Lynes v. Schmolt, 241 Iowa 1303, 1306, 45 N.W.2d 221, 222; Ehrhardt v. Ruan, supra [245 Iowa 193, 196, 61 N.W.2d 696, 698]."

In Tillotson v. Schwarck, 259 Iowa 161, 169, 143 N.W.2d 284, 288–289, we followed this rule by saying:

"Control means more than being able to stop the car reasonably quickly under the circumstances. It also connotes an ability with reasonable promptness to maneuver 'so as to guide and direct its course or movement in the manner willed by the operator, acting as the ordinarily careful and prudent driver would do under similar circumstances.' Paulsen v. Haker, 250 Iowa 532, [539–540] 95 N.W.2d 47 [52]."

It was proper to permit the jury to decide, guided by these principles, whether Grell had control of the vehicle.

VI. Defendants also contend it was error for the court to submit a general charge of negligence under the doctrine of res ipsa loquitur.

"Under the doctrine referred to, where injury occurs by an instrumentality under the exclusive control and management of defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that defendant was negligent." Shinofield v. Curtis, supra, 245 Iowa at 1360, 66 N.W.2d at 470; Schneider v. Swaney Motor Car Co., supra, 257 Iowa at 1184, 136 N.W.2d at 343; Smith v. Ullerich, 259 Iowa 797, 804, 145 N.W.2d 1, 5; Boyer v. Iowa High School Athletic Association, 260 Iowa 1061, 152 N.W.2d 293, 295–296.

" '* * * In considering the applicability of res ipsa loquitur, the question whether the particular occurrence is such

as would not happen if reasonable care had been used rests on common experience and not at all on evidence in the particular case that tends in itself to show such occurrence was in fact the result of negligence.' Shinofield v. Curtis, supra." Smith v. Ullerich, Boyer v. Iowa High School Athletic Association, both supra.

Thus the two foundation facts for application of the res ipsa doctrine, which permits an inference of defendant's negligence from happening of the injury, are: (1) exclusive control and management by defendant of the instrumentality which causes the injury, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. Boyer v. Iowa High School Athletic Association, supra.

In support of their contention urged in this division defendants maintain the second of these foundation facts for invoking the doctrine is missing. They assert "the doctrine is applicable only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and in the light of ordinary experience would presumably not have happened if those who had the management or control had exercised proper care." We quoted this statement in Shinofield v. Curtis, supra, 245 Iowa at 1361, 66 N.W.2d at 470–471. It now appears in 65A C.J.S. Negligence § 220.10.

There is no dispute plaintiff was standing as much as 20 feet off the traveled path when struck by the tree which was hit by defendant's truck roughly three feet off the traveled path. A collision between a motor vehicle and a stationary object such as a tree, in turn breaking the tree and knocking it against a person, is not an everyday occurrence and is one which in the ordinary course of things would not happen in the exercise of ordinary care. See Schneider v. Swaney Motor Car Co., supra, 257 Iowa at 1185, 136 N.W.

2d at 343 where we said, "[D]riving into the rear of a motor vehicle in plain daylight is such an occurrence as in the ordinary course of things would not happen if reasonable care had been used." Citing several Iowa authorities.

■ We know no logical reason why the same rule should not be applied to vehicles driven into trees in broad daylight. The jury could properly find these foundation facts existed and infer therefrom plaintiff's injury was caused by defendants' negligence. Defendants' position is not well taken. See Boyer v. Iowa High School Athletic Association, supra, 260 Iowa at 1061, 152 N.W.2d at 296.

■ Defendants assert a second reason the doctrine contended for does not apply is the absence of the underlying consideration for its adoption. They contend it cannot be said defendants had any knowledge of the circumstances of the accident that were not available to plaintiff. "* * * Under our decisions the underlying reason for the res ipsa rule is that the chief evidence of the true cause of the injury is practically accessible to defendant but inaccessible to the injured person. * * * [Citing authorities].

"* * * We have never held presence of this 'underlying reason' is an indispensable requirement for application of the doctrine." Boyer v. Iowa High School Athletic Association, supra.

■ Grell was in control of the tractor-trailer combination at the time of impact against the tree. He had the best opportunity to discover just what in its operation may have caused the collision. Plaintiff had no role in maneuvering the vehicle. We are not persuaded evidence of the true cause of the collision was not peculiarly accessible to defendants rather than to plaintiff.

In these circumstances it was proper to submit general negligence under the doctrine of res ipsa loquitur.

VII. What we have said in respect to the issues of lookout, lack of proper control and general negligence under the doctrine of res ipsa disposes of defendants' contention the trial court erred in failing to sustain their motion for directed verdict.

■ VIII. As previously noted the accident happened before July 4, 1965, the effective date of the amendment to section 619.17, Code 1962, which changed the burden of pleading and proving negligence of plaintiff, if any, when relied upon as a complete defense or bar to plaintiff's recovery. Here the burden was on defendants to plead and prove plaintiff's negligence contributed in any way or any degree directly to his injury or damage. Schultz v. Gosselink, 260 Iowa 115, 148 N.W.2d 434, 437–438; Burch v. Witt, 260 Iowa 221, 149 N.W.2d 126, 127; and Harlan v. Passot, 260 Iowa 501, 150 N.W.2d 87, 90. These opinions were filed before September 25, 1967, the date trial commenced.

In answer and amendment thereto, while denying negligence, defendants by way of affirmative defenses alleged they were invitees on plaintiff's premises where the accident occurred and plaintiff was guilty of negligence in (A) maintaining in an unsafe condition the driveway over which defendants were invited to travel, (B) failing to warn defendants of its unsafe condition and (C) voluntarily placing himself in a position where he should have known defendant's truck might slide and thereby exposing himself to injury, which was a proximate cause of plaintiff's damages. As stated, the court sustained plaintiff's motion to strike and withdraw these specifications of negligence at the close of the evidence.

Defendants assert in two other assignments the court erred in withdrawing these affirmative defenses which were supported by the evidence. They urge the court should have instructed upon them even though defendants may have assumed a greater burden than required of them by pleading plaintiff's negligence was a proxi-

mate cause of the accident when they needed only to plead it contributed in any manner or any degree directly to plaintiff's injury.

▪ We agree defendants' pleading plaintiff's negligence was a *proximate* cause of his injuries did not require them to assume that burden on the trial.

" 'A party by pleading more facts than he needs to does not ordinarily obligate himself to prove them. He will not be prevented from proceeding in the trial of the action merely because he has alleged more than he has proved, where the unproved allegations are unnecessary to authorize recovery.' Barnes v. Gall, 251 Iowa 921, 925, 103 N.W.2d 710, 713, quoting 41 Am.Jur., Pleading, section 369, and citing cases. See also section 619.9, Codes 1962, 1966." Harlan v. Passot, supra, 260 Iowa at 504, 150 N.W.2d at 89.

▪ If defendants proved by a preponderance of evidence plaintiff was guilty of negligence in one or more of the respects alleged as an affirmative defense, then plaintiff could not recover if such negligence contributed in any manner or to any degree directly to the injury or damage.

▪ In Schultz v. Gosselink, supra, 260 Iowa at 121, 148 N.W.2d at 437–438, we said:

"We hold the new statute, now section 619.17, Code 1966, affects both remedial or procedural and substantive rights. As to burden of proof the statute is retroactive and, of course, prospective. As to the quantum of proof it is prospective only.

"Stated otherwise, as to actions brought involving an accident which occurred prior to July 4, 1965, but trial commenced thereafter the burden is on defendant to plead and prove plaintiff's negligence contributed in any way or any degree directly to the injury or damage. However, in actions brought involving accidents which occurred on or subsequent to July 4, 1965, the de-

fendant, if he relies upon the negligence of plaintiff as a complete defense or bar to plaintiff's recovery, has the burden of pleading and proving negligence of plaintiff was a proximate cause of the injury or damage."

"The possessor of real estate is under a duty to use reasonable care to keep his premises safe for use by invitees. Failure to do so constitutes negligence. * * *" Hanson v. Town and Country, etc., Center, 259 Iowa 542, 547, 144 N.W.2d 870, 874.

▪ Defendants were invitees on plaintiff's premises within the definition stated in Restatement, Second, Torts, section 332 (3):

"An invitee is either a public invitee or a business visitor. A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Cited with approval in Hanson v. Town and Country, etc., Center, supra, and Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 1105, 147 N.W.2d 211, 215.

▪ In considering sufficiency of evidence to justify submission to the jury of the issue of plaintiff's negligence in any one or more of the respects alleged, the evidence must be viewed in the light most favorable to defendants. By analogy Rule 344(f) (2), Rules of Civil Procedure, is applicable. Walker v. Sedrel, supra, 260 Iowa 633, 149 N.W.2d at 878, and citations.

▪ If any one or more of the pleaded specifications of plaintiff's negligence has substantial support in the evidence it was error not to submit the issue to the jury. See authorities cited in Division I, supra.

There is no dispute plaintiff failed to warn defendant of the condition of the approach, driveway and pasture. Nor is there question whether plaintiff knew the conditions on the driveway over which he

had invited defendants to deliver the load of lumber. He testified:

"* * * On the surface of the pasture, or the acreage, or the driveway, or the road, there was a layer of crusty snow; snow that may have been melted somewhat by the sun and then frozen again. I would say it was approximately two to three inches in depth. As you walked through, it would crunch; crunchy, icy snow.·

"* * * Since the snow, there had been no travel over the lane. And the lane being as level as the adjoining property, it could be a little difficult to see where the lane was, except I think there would be a slight depression from the traffic over that lane, little more of a depression than there would have been on the earth surrounding the lane. * * * I had not done anything in the line of grading, or having somebody shovel to open up this driveway down to where that lumber was to be delivered. So, after I had driven the horses away, I stood there and saw the truck proceeding westward."

This evidence does not establish as a matter of law plaintiff had fulfilled the duty imposed to make his premises reasonably safe for defendants-invitees. We believe a jury question was engendered as to whether plaintiff had breached his duty to defendants.

It is true that upon arriving at the gate Grell stopped, got out to size up the gate and testified, "Whatever was there, I saw." But "while ordinarily a possessor of real estate would not be liable (or would not reasonably anticipate an unreasonable risk of harm to an invitee from an open or obvious defect), negligence may exist even though a defect is, in fact, open and obvious where the circumstances are such that there is reason to believe it would not be discovered or become obvious to the invitee or the *risk of harm involved would not be anticipated or appreciated by the invitee*. In such circumstances there may be generated a jury question as to whether the

premises are reasonably safe." (Emphasis supplied). Hanson v. Town and Country, etc., Center, supra, 259 Iowa at 549, 144 N.W.2d at 875.

A jury would be justified in finding plaintiff failed to fulfill his duty to keep his premises reasonably safe. Under these circumstances plaintiff had a duty to warn Grell of the danger involved. This he failed to do.

Defendants filed timely requested instructions setting forth their theory of plaintiff's negligence which were refused. The matter was raised again in their motion for new trial.

In instruction 9 the court told the jury:

"Defendants contend that any negligence on their part was not the proximate cause of plaintiff's injury and damage and that the sole proximate cause thereof was the condition of the premises over which the *motor vehicle was passing*.

"* * *

"In this case, if you find the negligence of defendants, if any, was the sole proximate cause of plaintiff's injuries and damages, if any, or if you find that such negligence, if any, was a proximate cause and that the condition of the premises over which the motor vehicle was passing was also a proximate cause of said injuries and damages, if any, defendants would be liable in this action. However, if you find that the condition of the premises over which the motor vehicle was passing was the sole and independent proximate cause of plaintiff's injuries and damages, if any, defendants could not be held liable in this action even though they had been guilty of negligence in one or more of the respects charged."

We think this instruction was in error in two important respects, prejudicial to defendant, telling the jury that to be a complete defense or bar to plaintiff's claim, defendants had the burden of proving plaintiff's negligence was the sole proximate

348

cause of his injury and telling the jury if plaintiff's negligence concurred with defendants' negligence as a proximate cause, defendants would be liable in this action.

As stated, defendants were only required to prove plaintiff's negligence contributed in any manner or in any degree directly to the injury or damage under the rule in effect prior to July 4, 1965. Schultz v. Gosselink, supra.

The circumstances here do not bring the case within the rule that applies where a third party's negligence or some other act concurs with that of defendant to cause plaintiff's injury. See Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391; Johnson v. Baker, 254 Iowa 1077, 1082, 120 N.W.2d 502, 505; and Davidson v. Cooney, 259 Iowa 1278, 1284, 147 N.W.2d 819, 823, and citations in these cases. In cases where the accident occurred after July 4, 1965, if plaintiff's negligence is established as a proximate cause, it is a complete defense even though it be a concurring proximate cause. Schultz v. Gosselink, supra.

Defendants made timely objections to this instruction which were renewed in their motion for new trial. It placed a greater burden on defendants than required and necessitates a new trial.

IX. The court did not err in failing to submit defendants' third specification of negligence.

X. Defendants' remaining assignment complains of instruction 15 and the court's failure to give their requested instruction 1. We find no reversible error in the instruction as given.

In view of our holding in Division VIII the case is—Reversed and Remanded for new trial.

All Justices concur except SNELL and LeGRAND, JJ., who dissent and STUART, J., who dissents from Division VI.

SNELL, Justice (dissenting).

I concur in reversal but dissent from the remand.

I do not think the factual situation supports any of the specifications of negligence or res ipsa loquitur.

LeGRAND, J., joins in this dissent.